STATE OF CONNECTICUT *v.* GILBERT TREAT
(14069)

DUPONT, C. J., and FOTI and HEIMAN, Js.

Argued June 5—decision released August 15, 1995

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Lisa Herskowitz,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction. The trial court imposed the seven years suspended portion of a ten year sentence that the defendant had received for the conviction of two counts of sexual assault in the third degree in violation of Gen-

eral Statutes § 53a-72a (a) (2).[1] The defendant claims that the trial court (1) failed to use the proper standard of proof in determining whether the defendant was in violation of probation pursuant to General Statutes § 53a-32,[2] (2) lacked sufficient evidence to support

[1] General Statutes § 53a-72a (a) provides in pertinent part: "A person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."

[2] General Statutes § 53a-32 provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

its finding of violation of probation, and (3) abused its discretion by revoking the defendant's probation. We affirm the judgment of the trial court.

Certain facts are relevant to this appeal. After serving three years of his sentence, the defendant was released from incarceration and began his probation on August 30, 1991. The defendant was not initially required to receive sex offender treatment as a condition of his probation. On October 9, 1991, the defendant's probation officer filed a motion to modify the defendant's probation to include a special condition requiring the defendant to undergo sex offender treatment. The trial court granted this motion on November 27, 1991. The defendant commenced sex offender treatment on March 4, 1992, but was discharged from the program on April 8, 1992, for failing to abide by the terms of his treatment contract. The defendant was subsequently arrested pursuant to a warrant and charged with two counts of violation of probation under § 53a-32. The first count charged that the defendant exposed himself. The second count charged that the defendant violated his probation by failing to comply with the requirements of sex offender treatment. The alleged conduct in the first count was not, however, the basis of the trial court's finding of a violation of probation. The trial court specifically found the basis of the violation was the defendant's failure to comply with sex offender treatment, a special condition of his probation.

On October 29, 1992, and November 10, 1992, the trial court conducted a violation of probation hearing.[3] The trial court reasonably could have found sufficient evidence to support a finding that the defendant had violated his probation. Patrick Liddle, a staff therapist with the sex offender treatment program, gave the fol-

---

[3] The defendant did not testify at the probation hearing.

lowing uncontroverted testimony. Liddle performed an initial evaluation of the defendant in January, 1992, after which the defendant signed a treatment contract. The contract expressly provided notice that any violation of the conditions of the contract could be grounds for termination from the sex offender treatment program at the discretion of the staff. One of the special conditions listed in the contract was "no unsupervised contact with children under 18 years of age." Liddle testified that the defendant had become increasingly argumentative with the staff and in group therapy. On at least two occasions the defendant bumped into female personnel in the hallways. Furthermore, the defendant insisted that he could do what he wanted, including having contact with children, and that the staff could not tell him what to do.

During treatment sessions, Liddle spoke with the defendant about the unacceptability of his behavior. Liddle informed the defendant that to remain in the program, he would have to honor the contract he had signed proscribing any unsupervised contact with children. The defendant responded by insisting that he had had contact with children, and would continue to have contact with children. The defendant was subsequently discharged from the program on April 8, 1992.[4]

Peter Gandelman, a therapist with the sex offender treatment program at the Veteran's Memorial Medical Center, also testified at the revocation hearing. Gandelman testified that the defendant came to his office on September 14, 1992, seeking to be admitted to the sex offender treatment program. Although Gandelman usually spends three or four hours evaluating a sex offender treatment candidate, he was able to determine

---

[4] Liddle testified further that in light of the defendant's behavior, it was highly unlikely that the program would accept him back, even if the probation department referred the defendant again, and the defendant agreed to abide by the contract.

after only forty-five minutes that the defendant was not an appropriate candidate for community based treatment. Gandelman described the defendant as being in denial that he currently had a problem. During the interview, the defendant acknowledged that he had sexually abused children, including his own son, but then minimized his offenses and did not show any remorse. Gandelman concluded that, in light of the defendant's history, and his minimization of and refusal to accept responsibility for his crimes, the defendant was a danger to the community and was not an appropriate candidate for community based treatment.

The trial court found that the defendant had violated the special condition of probation requiring sex offender treatment. By finding a violation of probation, and also by finding the defendant to be a risk and danger to society, the trial court impliedly found that the beneficial purposes of probation were not being served; *State* v. *DeMasi*, 34 Conn. App. 46, 55, 640 A.2d 138, cert. denied, 230 Conn. 906, 644 A.2d 920 (1994); and therefore imposed the seven years suspended portion of the defendant's original sentence.

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. 'At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.' General Statutes § 53a-32 (a). If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component

of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of 'the whole record,' the trial court 'may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence.' General Statutes § 53a-32 (b). In making this second determination, the trial court is vested with broad discretion. *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988) ('[a] defendant who seeks to reverse the exercise of judicial discretion, assumes a heavy burden')." (Citation omitted.) *State* v. *Davis*, 229 Conn. 285, 289–90, 641 A.2d 370 (1994).

The defendant claims that the trial court failed to use the proper standard of proof in determining that the defendant violated his probation. We disagree.

In 1992, when the trial court made its decision, the case law defining the proper standard of proof for probation revocation hearings had yet to be enunciated by either this court or our Supreme Court.[5] In *State* v. *Davis*, supra, 229 Conn. 285, our Supreme Court held that a trial court may not find a violation of probation unless it finds that the reasonable predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing. That is, "the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." Id., 302. The *Davis* court remanded the case to the trial court for a new revoca-

---

[5] The language of the statute bearing on the state's burden of proving a violation of probation, General Statutes § 53a-32 (b), is silent with regard to the applicable standard of proof. Also, the Supreme Court of the United States has not yet enunciated a minimum standard of proof applicable to revocation hearings.

tion hearing because it could not determine from its review of the record what standard of proof the trial court had applied.[6]

Here, the trial court did not indicate what standard of proof it applied at the revocation hearing. Accordingly, the state filed a motion for articulation, asking that the trial court clarify whether it applied the fair preponderance of the evidence standard in determining that the state had proven a violation of probation.[7] The trial court did issue an articulation indicating that, although at the time of the hearing it believed that a reasonable satisfaction standard applied, there was "very little question" at the time of the hearing that a violation of probation had been established and that the violation of probation was proven "by *at least* a preponderance of the reliable and probative evidence." (Emphasis in original.)[8]

In reaching this conclusion, the trial court referred to its original decision in which it stated that "there is really very little question in my mind that the state has established a violation of probation here and I will so find that a violation has been established." Ordinar-

---

[6] In *State* v. *Davis*, supra, 229 Conn. 302, the trial court is quoted as having stated that it was "convinced that it has heard reliable and appropriate evidence to the effect that there has been a violation of the probation condition and so a violation is found."

[7] Ordinarily, in civil cases, we may assume that a trial court has applied the fair preponderance of the evidence standard when it has failed to indicate the standard applied. *In re Juvenile Appeal (83-AB)*, 189 Conn. 58, 59, 454 A.2d 271 (1983).

[8] The defendant filed a motion for review in this court, requesting that we strike the portion of the articulation in which the court opined that the preponderance of the evidence standard was satisfied. We granted review but denied the requested relief. We also denied the defendant's request to submit a supplemental brief to address "the substantive parameters of a motion for articulation and the impact of the trial court's articulation on the defendant appellant's primary issue." At oral argument, the defendant conceded that the propriety of the motion for articulation was not at issue in this appeal.

ily, the "litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, [therefore] the standard of proof necessarily must be calibrated in advance." *Santosky* v. *Kramer*, 455 U.S. 745, 757, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). "Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard." Id. Here, in the articulation of its original decision, the trial court stated it was convinced at the time it rendered its original decision, as well as in retrospect, that the preponderance of the evidence standard of proof was sustained by the state. We conclude that the trial court applied the proper standard of proof.

The defendant next claims that the trial court lacked sufficient evidence to support its finding of a violation of probation. Again, we disagree.

To support a finding of probation violation, the evidence must "induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." *State* v. *Davis*, supra, 229 Conn. 302. In making its factual determination, the trial court is "entitled to draw reasonable and logical inferences from the evidence." *Payne* v. *Robinson,* 10 Conn. App. 395, 403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). This court "may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous." *State* v. *Scott,* 31 Conn. App. 660, 668, 626 A.2d 817 (1993). "A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

(Internal quotation marks omitted.) *Pollio* v. *Conservation Commission*, 32 Conn. App. 109, 115, 628 A.2d 20 (1993). " 'In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . .' " (Citation omitted.) *State* v. *Villano*, 33 Conn. App. 162, 168, 634 A.2d 907 (1993), cert. denied, 229 Conn. 916, 642 A.2d 1212 (1994); *State* v. *Scott*, supra, 668.

From the evidence presented in this case, the trial court could reasonably have found that the defendant violated his probation using the fair preponderance of the evidence standard of proof. The trial court stated that the specific violation stemmed from the defendant's "failure to comply with sex offender treatment which was made a condition of [the defendant's] probation." Such a finding is clearly supported from the testimony of each of the witnesses at the revocation hearing.

The defendant's third and final claim is that the trial court abused its discretion by revoking the defendant's probation. The defendant argues that even if the trial court was correct in finding a probation violation, the beneficial purposes of probation were still being served.[9] We are not persuaded.

When reviewing the second component of a probation revocation hearing, an appellate court must determine whether the trial court exercised its discretion properly by reinstating the original sentence and order-

---

[9] The defendant argues that due process requires that he be given fair warning of acts that may lead to revocation. Here, as a special condition of his probation, the defendant was required to receive sex offender treatment. Prior to receiving this treatment, the defendant signed a treatment contract that stated that any violation of the conditions of the contract may be grounds for termination and that the defendant's probation officer would be notified immediately of any such violation of the contract. Furthermore, Liddle testified that he spoke with the defendant on more than one occasion about the unacceptability of his behavior. We are satisfied that the defendant had adequate warning of acts that could result in the revocation of his probation and that his right to due process was not implicated.

ing incarceration. *State* v. *Roberson*, 165 Conn. 73, 80, 327 A.2d 556 (1973); *State* v. *Johnson,* 11 Conn. App. 251, 257, 527 A.2d 250 (1987). "In making this second determination, [whether the defendant's probationary status should be revoked] the trial court is vested with broad discretion. *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988)." *State* v. *Davis*, supra, 229 Conn. 290. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, 223 Conn. 411, 414–15, 611 A.2d 413 (1992). In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. *State* v. *DeMasi*, supra, 34 Conn. App. 55. "The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." *State* v. *Davis*, supra, 297.

General Statutes § 53a-32 (b) provides that revocation shall not be ordered "except upon consideration of the whole record . . . ." The record reveals that the defendant pleaded guilty to two counts of sexual assault in the third degree. A special condition of the defendant's probation was that he attend sex offender treatment. At the revocation hearing, there was uncontroverted testimony that the defendant openly expressed an unwillingness to abide by his treatment contract. The trial court had ample evidence before it to support the finding that the beneficial purposes of probation were no longer being served. *State* v. *Carey*, 228 Conn. 487, 495, 636 A.2d 840 (1994). The trial court

did not abuse its discretion in revoking probation and imposing the suspended portion of the defendant's sentence.

The judgment is affirmed.

In this opinion the other judges concurred.