STATE OF CONNECTICUT *v.* JAMES R. WELCH, SR.
(14353)

Landau, Schaller and Hennessy, Js.

Argued October 27, 1995—decision released February 20, 1996

*Kent Drager*, assistant public defender, for the appellant (defendant).

*Lisa Herskowitz*, deputy assistant state's attorney, with whom were *Vincent Dooley*, assistant state's attorney, and, on the brief, *Mark S. Solak*, state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32[1] and committing him to the custody of the commissioner of correction for a period of five years. On appeal, the defendant claims that the trial court (1) lacked sufficient evidence to support its finding of violation of probation, and (2) abused its discretion by revoking the defendant's probation.

---

[1] General Statutes § 53a-32 (b) provides: "If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

Certain facts adduced at the probation hearing are relevant to this appeal. On July 1, 1993, after a reversal and remand of his original conviction, the defendant pleaded guilty under the *Alford* doctrine[2] to one count of risk of injury to a child in violation of General Statutes § 53-21. The trial court sentenced the defendant to the custody of the commissioner of correction for a period of seven years, execution suspended, and placed the defendant on probation for a period of three years. The court imposed two special conditions of probation: (1) no contact whatsoever with the victims in the case; and (2) sex offender treatment as deemed appropriate by the probation authorities.

On July 6, 1993, the defendant met with his probation officer, Judith Haddad. Haddad reiterated the special conditions of the defendant's probation and referred the defendant to the sex offender treatment program at Northeast Clinical Specialists (Northeast). The defendant stated that he fully understood the conditions of his probation. Two weeks later, the defendant met with Linda Zaccaro, a consultant at Northeast, to be evaluated to determine whether he was an appropriate candidate for Northeast's sex offender treatment program. Zaccaro explained to the defendant that as a condition of his treatment, he would have to abide by the guidelines of Northeast's treatment program and presented to the defendant a written form containing Northeast's terms of service.

One of the conditions printed on the terms of service form stated: "I agree to cooperate with treatment and to sign authorization forms to allow the necessary exchange of information between [Northeast] and other parties involved in the past and present course of my treatment." An additional condition for sex offenders that had been written on the form by Zaccaro stated:

---

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

"No contact with minor children under 17 [years old]." Zaccaro apprised the defendant that under the "no contact" term, the defendant was not allowed to live in a household with children during his treatment at Northeast.

The defendant informed Zaccaro that he would not admit to any wrongdoing and the only reason he was attending the sex offender treatment program was to "get his probation officer off his back." The defendant stated that he understood the terms of service and then printed his name at the top of the terms of service form indicating that he "read and discussed the following [terms] with [his] therapist." Although Zaccaro initially felt that the defendant was not an appropriate candidate for treatment because he was in denial and reluctant to participate, she informed him that Northeast would continue to evaluate him for an additional one to six sessions.

On August 6, 1993, Zaccaro received a telephone call from Lisa Hightman, a therapist for the defendant's wife, Laura Welch. Hightman was concerned about an incident in which Laura Welch's nine year old daughter had grabbed the defendant's crotch area while the defendant and the daughter were wrestling at Laura Welch's home. Believing the incident to be relevant to the defendant's treatment, Zaccaro asked the defendant to sign an authorization form, in accordance with the terms of service, that would allow Zaccaro to speak to Hightman about the incident. The defendant refused to sign the authorization form.[3]

---

[3] The alleged incident of contact between the defendant and his wife's daughter is not the basis for the revocation of the defendant's probation. The incident is relevant, however, because it led to Zaccaro's request that the defendant sign the authorization to release information form. The defendant's subsequent refusal was one of the factors that led to Zaccaro's decision to terminate the defendant from Northeast's treatment program for noncompliance with the terms of service.

At a subsequent meeting, the defendant admitted to Zaccaro that he had stayed overnight at his wife's home on several occasions while his wife's nine year old daughter was present. The defendant also stated that he was not a sex offender and that Northeast could not stop him from living with children. The defendant informed Zaccaro that he wanted to terminate his sex offender treatment so that he could return to court and seek to have the special condition requiring treatment removed from his probation order.

Zaccaro terminated the defendant's treatment program on September 28, 1993, because she believed he was living in a household with children and had refused to sign the authorization form to release information. Zaccaro informed Haddad of Northeast's decision to terminate the defendant from the treatment program in a report received by Haddad on October 7, 1993. In response to Zaccaro's report, Haddad prepared an arrest warrant application for violation of probation predicated on the defendant's failure to comply with the special condition of his probation requiring sex offender treatment.

On October 27, 1994, the trial court conducted a probation hearing. The court found, by a preponderance of the evidence, that the beneficial purposes of probation were not being served, and imposed a sentence of five years imprisonment.

I

The defendant first asserts that the evidence presented at his probation revocation hearing was insufficient to prove he violated his probation because the trial court's findings that the defendant had resided in a household with a minor child and had refused to sign necessary authorizations were clearly erroneous. We disagree.

At the outset, we note that the defendant has presented this claim as if the terms of service of his sex offender treatment program are the applicable conditions of his probation. He claims that because the state failed to present sufficient evidence to establish, by a fair preponderance of the evidence, that he either resided with a minor or improperly refused to sign authorizations, he must be acquitted of the charge of violation of probation. He analyzes the evidence concerning these two terms of service as if they were independent conditions of his probation.

The proper issue before this court, however, is whether the trial court properly found, by a preponderance of the evidence, that the defendant failed to comply with the special condition of his probation requiring sex offender treatment. See *State* v. *Treat*, 38 Conn. App. 762, 770, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995). Although the defendant's compliance or noncompliance with the specific terms of his treatment program may be a relevant factor in our determination of whether the trial court's decision was supported by the evidence, it would be inappropriate for us to treat the individual terms of service as the applicable conditions of probation.[4]

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether

---

[4] Such an approach would hamper the prosecution of cases where the defendant's conduct, although antithetical to sex offender treatment, does not violate a specific term of service. In addition, this approach could be interpreted to mandate a finding of a violation of probation even if the defendant commits a minor technical breach of a term of service.

the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . or . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . ." (Citations omitted; internal quotation marks omitted.) Id., 766–67.

"To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. *State* v. *Davis*, [229 Conn. 285, 302, 641 A.2d 370 (1994)]. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Treat*, supra, 38 Conn. App. 769–70. A fact is more probable than not when it is supported by a fair preponderance of the evidence. *State* v. *Haggood*, 36 Conn. App. 753, 768, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995).

In deciding that the defendant violated his probation, the trial court found that the defendant "abused the opportunity given him to avoid incarceration in that he has not met the terms of his probation." The court

further found that the defendant "refused to comply with the terms of his sexual offense treatment, he has refused to sign authorizations necessary for the therapist to obtain relevant and material background information. . . . In addition, he has resided in a household with a minor child contrary to the terms of his sexual offense treatment. He has continually manifested a contrary attitude toward the rehabilitative orders of this court and demonstrated a complete absence of good faith in his participation in the sexual abuse therapy."

We conclude that the evidence adduced at the probation violation hearing was more than sufficient to support the trial court's findings and to induce a reasonable belief that it was more probable than not that this defendant violated a condition of his probation.

## II

The defendant also claims that the trial court abused its discretion by revoking the defendant's probation. The defendant argues that even if the trial court was correct in finding a probation violation, the beneficial purposes of probation were still being served. We are not persuaded.

"When reviewing the second component of a probation revocation hearing, an appellate court must determine whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556 (1973); *State* v. *Johnson,* 11 Conn. App. 251, 257, 527 A.2d 250 (1987). In making this second determination, [whether the defendant's probationary status should be revoked] the trial court is vested with broad discretion. *State* v. *Smith,* 207 Conn. 152, 167, 540 A.2d 679 (1988). *State* v. *Davis,* supra, 229 Conn. 290. In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling

. . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . *Walker* v. *Commissioner of Correction*, 223 Conn. 411, 414–15, 611 A.2d 413 (1992). In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. *State* v. *DeMasi*, [34 Conn. App. 46, 55, 640 A.2d 138, cert. denied, 230 Conn. 906, 644 A.2d 920 (1994)]. The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public. *State* v. *Davis*, supra, 297.

"General Statutes § 53a-32 (b) provides that revocation shall not be ordered except upon consideration of the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Treat*, supra, 38 Conn. App. 770–71.

Our review of the record reveals that there was ample evidence adduced at the probation hearing to establish that the defendant openly expressed an unwillingness to comply with his sex offender treatment. The evidence supported the trial court's findings that "the rehabilitative purposes of probation have been frustrated and thwarted through the attitude and conduct of the petitioner," and that "the beneficial purposes of the defendant's probation were no longer being served." We conclude, therefore, that the trial court did not abuse its discretion in revoking the defendant's probation.

The judgment is affirmed.

In this opinion the other judges concurred.