STATE OF CONNECTICUT *v.* SCOTT REPETTI
(AC 20168)

Schaller, Pellegrino and Dupont, Js.

Argued September 14—officially released November 7, 2000

*Sebastian O. DeSantis*, special public defender, with whom, on the brief, was *Elizabeth A. Sabilia*, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom were *Sarah Steere*, assistant state's attorney, and, on the brief, *Kevin Kane*, state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Scott Repetti, appeals from the judgment of the trial court revoking his probation after finding that he had violated its terms. The defendant claims on appeal that (1) the evidence presented did not support a finding that he violated the terms of his probation, (2) the court abused its discretion in terminating his probation and (3) the office of adult probation altered the terms of his probation in violation of his constitutional rights. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In April, 1997, the defendant was sentenced after having pleaded guilty to burglary in the second degree in violation of General Statutes § 53a-102 and burglary in the third degree in violation of General Statutes § 53a-103. The court imposed concurrent terms of five years imprisonment on each charge, execution suspended, with five years of probation. The court imposed and the defendant agreed to the standard conditions of probation, which included, inter alia, that he not violate any state or federal criminal laws.

On June 30, 1999, the defendant was arrested on a charge of burglary in the third degree in violation of

§ 53a-103[1] in connection with an incident at his neighbor's home. The neighbor, Anita D'Lizaaraga, complained that while she was asleep she heard a noise and felt vibrations that woke her. Upon emerging from her bedroom, she noticed that the screen was removed from one of her windows. She saw the defendant looking in the window toward her bedroom, and saw that his head was through the window and in the room. The burglary charge was dismissed for lack of probable cause, and the defendant was then charged with criminal trespass in the first degree in violation of General Statutes § 53a-107[2] and breach of the peace in violation of General Statutes § 53a-181.[3] On July 7, 1999, the defendant's probation officer prepared a warrant alleging a violation of his probation pursuant to General Statutes § 53a-32.[4] The warrant described in detail the June 30, 1999 incident, as well as two other violations of the defendant's special probation conditions. The warrant noted that the defendant had been charged

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-107 (a) provides in relevant part: "A person is guilty of criminal trespass in the first degree when (1) Knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to him by the owner of the premises or other authorized person . . . ."

[3] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do . . . ."

[4] General Statutes § 53a-32 (a) provides in relevant part: "Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. . . ."

with violating § 53a-103 in connection with the June 30, 1999 incident.

Before the commencement of the violation of probation hearing, the state filed a substitute information charging the defendant with criminal trespass in the third degree in violation of General Statutes § 53a-109[5] and disorderly conduct in violation of General Statutes § 53a-182.[6] The defendant voiced no objection to the substituted charges at that time, and the hearing proceeded to conclusion. At that hearing, the court found D'Lizaaraga's testimony concerning the incident of June 30, 1999, to be credible. The court thereafter found that the defendant was guilty of criminal trespass and disorderly conduct and, therefore, that he had violated a law of the state of Connecticut in violation of the terms of his probation. The court then opened the previous judgment and imposed the balance of the jail sentence.

I

The defendant first claims that the laws he was found to have violated were different from those cited in his violation of probation warrant.

Although the due process requirements[7] in a probation revocation hearing are less demanding than those in a full criminal proceeding, they include the provision of written notice of the claimed violations to the defendant. See *State* v. *Durkin*, 23 Conn. App. 642, 647, 583 A.2d 1303 (1990), rev'd on other grounds, 219 Conn.

---

[5] General Statutes § 53a-109 (a) provides in relevant part: "A person is guilty of criminal trespass in the third degree when, knowing that he is not licensed or privileged to do so: (1) He enters or remains in premises which are . . . enclosed in a manner designed to exclude intruders . . . ."

[6] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (2) . . . annoys or interferes with another person . . . ."

[7] Although the defendant makes this argument as part of his claim of insufficient evidence, this claim falls under a different due process theory.

629, 595 A.2d 826 (1991); see also General Statutes § 53a-32; *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782–86, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

Here, the defendant's violation of probation warrant fully described the June 30, 1999 incident, which ultimately was a basis for the court's finding a violation of probation. The substitute information filed prior to the hearing charged the defendant with criminal trespass in the third degree and disorderly conduct, and he offered a defense at the hearing. From the warrant and the substitute information, the defendant was aware that he was accused of violating specific criminal laws of this state because of his actions at D'Lizaaraga's residence. The court found that he had violated both of the laws as charged in the substitute information and, therefore, had violated his probation. Under those circumstances, it is clear that the defendant received notice of the ways in which he was ultimately found to have violated his probation. See also *State* v. *Outlaw*, 60 Conn. App. 515, 524–26, 760 A.2d 140 (2000).

The defendant also claims that there was insufficient evidence to support a finding of violation of probation. The standard of proof required to find a violation is the same as the one used in a civil proceeding. For the court to find a violation, "the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his . . . probation." *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). "In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination [of a violation] if we determine that [it] was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Samuel*, 57 Conn. App. 64, 67–68, 747 A.2d 21, cert. denied, 253 Conn. 909, 753 A.2d 942 (2000); *State* v. *Welch*, 40 Conn. App. 395, 401, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996).

The court found D'Lizaaraga's testimony credible as to the June 30, 1999 incident, and found that the defendant's conduct constituted criminal trespass in the third degree and disorderly conduct, and that he indeed had violated laws of the state of Connecticut, which constituted a violation of probation. Applying the clearly erroneous standard of review to the record before us, we conclude that on the basis of the evidence presented at the hearing, the court reasonably could have found by a preponderance of the evidence that the defendant violated his probation by committing the crimes of criminal trespass in the third degree and disorderly conduct. We therefore sustain the court's finding that the defendant violated the terms of his probation.

II

The defendant next claims that the court abused its discretion in terminating his probation.

Once the court determines that there has been a violation of the terms of probation, it then must decide whether the defendant's probationary status should be revoked. "On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. General Statutes § 53a-

32 (b). In making this second determination, the trial court is vested with broad discretion. *State* v. *Smith,* 207 Conn. 152, 167, 540 A.2d 679 (1988) ([a] defendant who seeks to reverse the exercise of judicial discretion, assumes a heavy burden)." (Internal quotation marks omitted.) *State* v. *Davis,* supra, 229 Conn. 290; *State* v. *Treat,* 38 Conn. App. 762, 767, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995).

The court stated that it carefully considered all of the evidence during both phases of the hearing, and found that the defendant was not amenable to rehabilitation and that he posed a threat to public safety. After our review of the record, we conclude that the court did not abuse its discretion in revoking the defendant's probation.

### III

The defendant claims that the office of adult probation altered the terms of his probation in violation of his due process rights.

Additional facts are necessary for the resolution of this issue. In addition to the standard conditions of probation, the court that sentenced the defendant on his 1997 burglary conviction imposed several special conditions. These included intensive probation for the first six months, sex offender treatment, no contact with the victim, substance abuse treatment, random urine testing and electronic monitoring. The defendant received a list of intensive probation conditions from his probation officer at the outset of his probationary period.[8] Subsequently, he was given an additional list of sex offender probation conditions, which included that he remain drug and alcohol free. The defendant signed both lists and agreed to abide by the conditions therein. Subsequently, during a surprise visit to the

---

[8] The court ordered that these conditions were to last six months.

defendant's residence, his probation officer found him drinking a forty ounce container of beer. The officer testified as to this incident at the defendant's probation revocation hearing, and the court found it to be an additional basis for holding him in violation.

The defendant now argues that the office of adult probation lacked authority to impose the sex offender conditions. Although the defendant devotes a major portion of his briefs to a discussion of the constitutional impropriety of the office's action in adding conditions of probation after the imposition of the original sentence, the only additional condition imposed that he was found to have violated was the requirement that he refrain from consuming alcohol.

General Statutes § 53a-30 (b) expressly authorizes the office of adult probation to "require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court." This court has previously approved of the office's requirement of sex offender treatment for a probationer where such treatment had not explicitly been included in the court-ordered terms of probation. In *State* v. *Thorp*, 57 Conn. App. 112, 117, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000), we held that because the sentencing court could have imposed sex offender treatment under § 53a-30 (a), and because such treatment was not inconsistent with that court's conditions of no contact with the victim and substance abuse evaluation and treatment, the actions of the office of adult probation were not improper. Although the defendant in *Thorp* received a hearing before the conditions were added, we noted that due process did not require a hearing. Id., 119.

In this case, one of the general conditions of probation imposed by the court was that the defendant "sub-

mit to any alcohol and/or drug testing required by the probation officer." Implicit in a testing requirement is the authorization of the tester to limit or prohibit the use of the substance for which testing will be done. Otherwise, the testing would serve little purpose. Furthermore, similar to the probationer in *Thorp*, the defendant's special conditions included no contact with the victim and substance abuse treatment. Unlike the conditions in *Thorp*, however, the defendant's conditions in this case explicitly included sex offender treatment. Thus, the office's requirement that, as part of sex offender treatment, the defendant refrain from the use of alcohol is wholly consistent with the terms ordered by the court, and it cannot be said that the alcohol prohibition was improperly imposed.

Regarding the other additional conditions that the office of adult probation imposed, there is no claim made that any of them were found to be the basis for the violation of probation, and the defendant is no longer subject to them since his probation has been revoked. We therefore decline to address the issue of whether the office was authorized to impose those additional terms because it is irrelevant.

The judgment is affirmed.

In this opinion the other judges concurred.