## STATE OF CONNECTICUT *v.* EMANUEL SMITH
### (SC 16336)

McDonald, C. J., and Borden, Norcott, Katz and Sullivan, Js.*

* Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation on this panel is authorized by General Statutes § 51-198 (c). The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued November 29, 2000—officially released May 1, 2001

*M. Elizabeth Reid*, assistant public defender, for the appellant (defendant).

*James Ralls*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Matthew Couloute, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the due process clause of the federal constitution requires that a defendant be afforded a court hearing with counsel before a defendant's conditions of probation may be modified by the probation authorities. After a hearing held pursuant to General Statutes § 53a-

32 (a),[1] the trial court, *Rodriguez, J.*, found the defendant, Emanuel Smith,[2] in violation of one of the conditions of his probation and rendered judgment imposing the defendant's original sentence of eight years imprisonment, which had been suspended. The defendant appeals, claiming a violation of his due process rights under the fourteenth amendment to the United States constitution[3] and article first, § 8, of the Connecticut constitution.[4] We affirm the trial court's judgment.

The following facts are relevant to our disposition of this appeal. On March 21, 1995, the defendant pleaded guilty to several offenses under two separate, unrelated cases. In the first case, the defendant pleaded guilty to the charges of burglary in the second degree in violation of General Statutes § 53a-102 (a),[5] and sexual assault in the third degree in violation of General Statutes § 53a-72a (a).[6] In the second case, the defendant pleaded

[1] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . ."

[2] The spelling of the defendant's first name in this case is in accordance with a note in the files by the department of correction.

[3] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[4] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[5] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[6] General Statutes § 53a-72a (a) provides: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person, or (2) engages

guilty to a violation of probation in violation of § 53a-32,[7] with the underlying offenses being possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a),[8] and interfering with an officer in violation of General Statutes § 53a-167a (a).[9] In the first case, the trial court, *Mintz, J.*, imposed a sentence of ten years imprisonment, execution suspended after four years, followed by five years probation; and in the second case, a sentence of two years imprisonment to run consecutive to the first sentence. Thus, the court approved a total effective sentence of twelve years imprisonment, execution suspended after four years, followed by five years probation. The original conditions of the defendant's probation included no contact with the victim, compliance with a standing criminal restraining order, substance abuse evaluation, and "treatment as deemed appropriate." While the defendant was incarcerated, his probation officer, Dale Thurston, modified the defendant's probation to include participation in a sex offender treatment program.[10] A

in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."

[7] See footnote 1 of this opinion.

[8] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[9] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[10] The department of special services filed a report recommending that upon release from prison, the defendant should engage in outpatient sex

copy of the amended condition was delivered to the defendant in prison, which he signed.

Upon the defendant's release from prison, William Anselmo, who was the probation officer now overseeing the defendant's case, made an appointment for the defendant at the sex offender unit of special services in Norwalk, and informed him of that date. Anselmo stressed to the defendant the importance of the evaluation process. Anselmo stated that the time allotted for the defendant to meet with the therapist would be very limited, and that even being fifteen minutes late for an appointment could prevent the therapist from meeting with the defendant. The evaluation process, if the defendant were cooperative, normally could be completed in three to four visits.

After attending a few meetings on time, the defendant arrived late to a meeting on February 24, 1998, did not receive an evaluation that day, and was informed that he would be removed from the program if he were late again. On March 24, 1998, the defendant arrived late again and was told that he was expelled from the program.

Thereafter, the probation department moved to have the defendant's probation revoked. At the revocation hearing, the trial court determined that the defendant had violated his probation because he failed to comply with the condition of probation regarding sexual offender treatment. The trial court then sentenced the defendant to the unexecuted term of his original sentence.[11] The defendant appealed from the judgment of

---

offender treatment. On the basis of this recommendation, the office of adult probation modified the defendant's probation to include sex offender treatment.

[11] The trial court, in making its ruling, stated: "[E]valuations were made while the defendant was still in the custody of the commissioner of correction. The defendant was informed that he would be subject to conditions to include sexual offender treatment both before and after his release. The court finds based on all of the evidence presented in this case that the defendant violated the conditions of his probation by not cooperating with

the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

This appeal is limited to the following issues: (1) whether the modification of the defendant's probation by the office of adult probation without a hearing and counsel denied him due process of law under the federal constitution;[12] and (2) if the modified condition of probation was validly imposed, did the trial court abuse its discretion in concluding that the defendant violated his probation and that the rehabilitative needs of probation were no longer being met?

## I

The defendant, at the revocation hearing, did not claim that his probation was modified in violation of his due process rights under the federal or state constitution and, therefore, asks this court to review his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and *State* v. *Evans*, 165 Conn. 61, 69–70, 327 A.2d 576 (1973). Under *Golding*, "a defendant can prevail on a claim of constitutional error

the probation department and/or the individuals at the sexual offender program by arriving late, by arriving with the attitude that he was not making that part of his probationary condition a priority item by not cooperating with the probation department and the treatment organization. The defendant is found to have violated the conditions of his probation."

[12] Although the defendant also claims a violation under the state due process clause, our decision is confined to the federal constitution because the defendant has failed to provide an independent analysis of the state constitutional issue. See *State* v. *Ellis*, 232 Conn. 691, 692 n.1, 657 A.2d 1099 (1995). "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Citations omitted.) *State* v. *Robinson*, 227 Conn. 711, 721–22, 631 A.2d 288 (1993); see also *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994); *State* v. *Joyner*, 225 Conn. 450, 458 n.4, 625 A.2d 791 (1993); *State* v. *Rosado*, 218 Conn. 239, 251 n.12, 588 A.2d 1066 (1991).

not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 239–40. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." *State* v. *Beltran*, 246 Conn. 268, 275, 717 A.2d 168 (1998). We review the defendant's claim because the record is adequate for review and the claim is constitutional in nature. See *State* v. *Henry*, 253 Conn. 354, 359, 752 A.2d 40 (2000); *State* v. *Hinton*, 227 Conn. 301, 308–309, 630 A.2d 593 (1993). The defendant's claim fails under the third prong of *Golding*, however, because we conclude that due process does not require a court hearing or counsel before the office of adult probation modifies a condition of probation.

A

Over the past seventy years, the United States Supreme Court has expanded the protections afforded a defendant regarding the right to counsel and the right to a court hearing in criminal proceedings. See *Argersinger* v. *Hamlin*, 407 U.S. 25, 37, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972) (expanding right to counsel to state felony or misdemeanor cases through fourteenth amendment); *In re Gault*, 387 U.S. 1, 41, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (right to counsel attaches at juvenile proceedings in which institutional confinement would result); *Johnson* v. *Zerbst*, 304 U.S. 458, 462, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) (right to counsel expanded to attach to all federal cases); *Powell* v. *Ala-*

*bama*, 287 U.S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158 (1932) (indigents afforded right to counsel under sixth amendment in all federal capital offense cases).

In addition, the Supreme Court also has sought to establish certain minimum procedural protections for individuals on parole and probation. In *Morrissey* v. *Brewer*, 408 U.S. 471, 482–83, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the court held that the due process clause requires that an individual on parole be afforded a hearing before his parole is revoked. In determining whether the nature of the parolee's interest was within the due process protection of the fourteenth amendment, the court stated: "The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked. We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." Id., 482.

Subsequently, in *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the Supreme Court affirmed the principles set forth in *Morrissey* and held that, because revocation of probation results in

the same loss of liberty, the same guarantee of due process applies to revocations of probation.[13] Relying on the standard set forth in *Morrissey* and *Gagnon*, the defendant in the present case argues that modifications of probation result in a loss of liberty similar to the loss caused by revocation, and he urges this court to extend due process procedural protection to probation modifications. We disagree.

We previously have never considered whether due process requires that an individual on probation be afforded an opportunity to be heard with counsel before the office of adult probation may modify the defendant's conditions of probation. Although the right to counsel and a hearing has been expanded over the years, particularly with regard to parole and probation revocations, we agree with the numerous federal and state courts that have held that due process does not require a court hearing or counsel before the conditions of an individual's probation may be modified. See *United States* v. *Silver*, 83 F.3d 289, 292 (9th Cir. 1996) (extension of probation period); *Forgues* v. *United States*, 636 F.2d 1125, 1127 (6th Cir. 1980) (same); *United States* v. *Cornwell*, 625 F.2d 686, 688–89 (5th Cir. 1980) (same); *United States* v. *Carey*, 565 F.2d 545, 546–47 (8th Cir. 1977) (same); *Skipworth* v. *United States*, 508 F.2d 598, 600–602 (3d Cir. 1975) (same); *Edwards* v. *State*, 216 Ga. App. 740, 741, 456 S.E.2d 213 (1995) (adding condition of completing sex offender treatment); *People* v. *Britt*, 202 Mich. App. 714, 716–17, 509 N.W.2d 914 (1993) (adding condition that defendant wear electronic monitor or tether); *Ockel* v. *Riley*, 541 S.W.2d 535, 544 (Mo. 1976) (extension of probation period); *State* v. *Zeisler*, 19

[13] The Supreme Court stated: "[P]robation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer*, supra, [408 U.S. 482]." *Gagnon* v. *Scarpelli*, supra, 411 U.S. 782.

Ohio App. 3d 138, 141, 483 N.E.2d 493 (1984) (adding condition that defendant complete probation diversion program); *Sanchez* v. *State*, 603 S.W.2d 869, 870 (Tex. App. 1980) (adding condition that defendant ingest antabuse). Accordingly, we conclude that an order of probation may be modified by the probation authorities ex parte, and that there is no requirement that the defendant be given a court hearing with the benefit of counsel before the modification properly may occur.

The key distinction regarding this issue is that a modification of an individual's probation does not require the same procedural protections as a probation revocation. In particular, the nature of the interest and the loss resulting from a modification simply do not parallel the fundamental nature of the interest or the seriousness of the loss involved in *Morrissey* or *Gagnon*. The primary loss occasioned by a modification of a condition of probation is still only the possibility of future revocation, a loss that potentially occurs only if the condition is not met.[14] Because a probationer is entitled to a hearing prior to revocation, the potential of loss caused by modifying a condition of probation is not considered sufficiently grievous to require a hearing. See *Morrissey* v. *Brewer*, supra, 408 U.S. 482; see also *Meachum* v. *Fano*, 427 U.S. 215, 224–25, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) (rejecting argument that "any" loss is sufficient to invoke due process, noting

---

[14] In *Skipworth* v. *United States*, supra, 508 F.2d 601–602, a case widely cited by courts addressing this issue, the Court of Appeals stated: "While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as 'grievous' a 'loss' as revocation, and here it entailed no greater restrictions than those which existed previously. In fact, the primary 'loss' suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur."

that "determining factor is the nature of the interest involved rather than its weight").

Revocation proceedings often resolve a contested factual determination that requires the trial court to decide whether there was, in fact, a violation of probation. For modifications of probation, however, it is not necessary for the trial court to make a finding of a probation violation.[15] Furthermore, an individual on probation has an opportunity at the probation revocation proceeding to contest the modified condition. *State v. Cooley*, 3 Conn. App. 410, 414–15, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1241 (1985) (defendant's probation will not be revoked on ground that he violated condition of probation if that condition is shown at revocation hearing to have no rehabilitative purpose). Even prior to the violation of probation hearing, if an individual on probation believes that the office of adult probation imposed an unreasonable condition, he may request a hearing pursuant to General Statutes § 53a-30 (c).[16]

Although "[p]robation is the product of statute"; *State v. Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988); see

[15] In *Skipworth v. United States*, supra, 508 F.2d 602, the Court of Appeals highlighted this distinction: "In revocation proceedings, the trial judge must reasonably satisfy himself that the probationer has broken some law while on probation or has otherwise violated a condition of his probation. While the judge has considerable discretion as to whether to order revocation, he must at a minimum make an initial factual finding of a probation violation. A revocation hearing, therefore, provides the probationer with the crucial opportunity to contest an allegation of violation."

[16] General Statutes § 53a-30 (c) provides: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

General Statutes § 53a-29[17] et seq.; modifications of probation routinely are left to the office of adult probation.[18] When the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to § 53a-30.[19] See *State* v. *Thorp*, 57 Conn. App. 112,

---

[17] General Statutes § 53a-29 (a) provides: "The court may sentence a person to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice."

[18] Specifically, we note that the comment to § 53a-30 by the commission to revise the criminal statutes provides: "It is contemplated that, in sentences of probation, the court will, as it does now, usually leave the conditions to be set by the probation authorities." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 16 (1969). The comment by the commission is especially insightful because the commission was specially authorized by the legislature to propose and report a general revision to the criminal statutes. 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2000) § 48.09, pp. 447–48; see *State* v. *Kluttz*, 9 Conn. App. 686, 693, 521 A.2d 178 (1987); see generally Commission to Revise the Criminal Statutes, Commentary on Title 53a, The Penal Code.

[19] General Statutes § 53a-30 provides in relevant part: "(a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip the defendant for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support the defendant's dependents and meet other family obligations; (4) make restitution of the fruits of the defendant's offense or make restitution, in an amount the defendant can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with the minor's parents or in a suitable foster home, (B) attend school, and (C) contribute to the minor's own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) if convicted of a misdemeanor or a felony, other than a capital felony, a class A felony or a violation of section 21a-278, 21a-278a, 53a-55, 53a-56, 53a-56b, 53a-57, 53a-58 or 53a-70b or any offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court, and any sentence of imprisonment is suspended, participate in an alternate incarceration program; (9) reside

117, 121, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000) (court approved adult probation office's requirement of sex offender treatment for probationer where such treatment had not been explicitly included in court-ordered terms of probation; due process does not require hearing); *State* v. *Mobley*, 42 Conn. Sup. 574, 591–95, 634 A.2d 305, aff'd, 33 Conn. App. 103, 105, 633 A.2d 726 (1993), cert. denied, 228 Conn. 917, 636 A.2d 849 (1994) (adopting as well reasoned trial court's "detailed and comprehensive memorandum of decision"). Thus, requiring a hearing with counsel every time a condition of probation is modified by the office of adult probation would severely impair the supervisory and rehabilitative role of the office of adult probation. We also are persuaded that the additional condition imposed on the defendant, attending sex offender treatment, was not unreasonable because the condition could have been included in the original probation conditions.[20]

in a residential community center or halfway house approved by the Commissioner of Correction, and contribute to the cost incident to such residence; (10) participate in a program of community service labor in accordance with section 53a-39c; (11) participate in a program of community service in accordance with section 51-181c; (12) if convicted of a violation of subdivision (2) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, undergo specialized sexual offender treatment; (13) satisfy any other conditions reasonably related to his rehabilitation. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(b) When a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court. . . ."

[20] In a similar context, the United States Supreme Court has held that a defendant has no right to a hearing concerning prison transfers as long as "the conditions or degree of confinement to which the prisoner is subject is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye* v. *Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976).

We conclude that the due process clause of the fourteenth amendment to the United States constitution does not require notice and a hearing with the benefit of counsel prior to an order modifying the terms of probation. Accordingly, the defendant's claim fails the third prong of *Golding*.

B

The defendant also claims that, although § 53a-30 (b),[21] the statute addressing modifications of probation, does not require a court hearing before the office of adult probation may modify a condition, such a procedure is required because of the accompanying provision of § 53a-30 (c).[22] It is well settled that this court will not review statutory claims that are raised for the first time on appeal. *State* v. *Gates*, 198 Conn. 397, 401–402, 503 A.2d 163 (1986). Furthermore, statutory, nonconstitutional claims are not reviewable under *Golding*. Id. Based on the defendant's admission at oral argument before this court that this statutory argument was not raised in the trial court, we find no basis in the record to consider his newly raised statutory claim, which was "never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word . . . ." *State* v. *Taylor*, 153 Conn. 72, 86, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); see *State* v. *Gates*, supra, 402.

II

The defendant next claims that, even if the modified condition of probation validly had been imposed, the trial court abused its discretion and improperly revoked his probation because: (1) the defendant's tardy arrivals at the sex offender treatment sessions did not warrant

---

[21] See footnote 19 of this opinion.
[22] See footnote 16 of this opinion.

revocation of probation; and (2) the rehabilitative purposes of probation were still being served. Having reviewed the record, briefs and arguments of the parties, we conclude that the defendant's claim is entirely without merit because the late arrivals and uncooperative attitude were sufficient grounds to revoke his probation.

"The standard of review of an order revoking probation is whether the trial court abused its discretion; if it appears that the trial court was reasonably satisfied that the terms of probation had been violated, and, impliedly, that the beneficial purposes of probation were no longer being served, then the order must stand." *State* v. *Roberson*, 165 Conn. 73, 80, 327 A.2d 556 (1973). In making this determination, the trial court is vested with broad discretion. *State* v. *Smith*, supra, 207 Conn. 167 (defendant who seeks to reverse exercise of judicial discretion assumes heavy burden); *State* v. *Davis*, 229 Conn. 285, 290, 641 A.2d 370 (1994); *State* v. *Repetti*, 60 Conn. App. 614, 619–20, 760 A.2d 964 (2000), cert. denied, 255 Conn. 923, 763 A.2d 1040 (2001); *State* v. *Treat*, 38 Conn. App. 762, 767, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995).

We recognize that, in the present case, sex offender treatment was a key component of the rehabilitative process because it was directly connected to one of the underlying crimes to which the defendant had pleaded guilty. Failure to comply with a condition of probation is a sufficient basis upon which to order a violation of probation. See *State* v. *Davis*, supra, 229 Conn. 302; *State* v. *Welch*, 40 Conn. App. 395, 401–402, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996); *State* v. *Treat*, supra, 38 Conn. App. 765–66; *State* v. *DeMasi*, 34 Conn. App. 46, 56, 640 A.2d 138, cert. denied, 230 Conn. 906, 644 A.2d 920 (1994). Here, the defendant failed to complete the conditions of his probation because he repeatedly had arrived late to the sex

offender treatment sessions. Moreover, the defendant was told multiple times about the importance of the evaluation process and sex offender treatment sessions, that he must be there on time, and that if he were late, the therapist would not be able to meet with him. In fact, prior to being terminated from the sex offender treatment session in March, 1998, the defendant was told that if he were late one more time he would be removed from the treatment program. Lastly, the defendant indicated that he could not arrange to arrive on time and his actions demonstrated that the treatment sessions were not a priority in his life.

The trial court, therefore, reasonably could have found that, without the treatment, the likelihood of the defendant committing such crimes again had not decreased, and that the goals of rehabilitation were not being adequately met. Accordingly, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation.

The judgment is affirmed.

In this opinion the other justices concurred.