******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ANTHONY D. ORR
## (AC 40886)

DiPentima, C. J., and Lavine and Elgo, Js.*

*Syllabus*

The defendant, who had been convicted of robbery in the first degree, appealed to this court from the judgment of the trial court, revoking his probation and sentencing him to five years of imprisonment. The defendant had signed a form that contained conditions of probation that required, inter alia, that he not violate any criminal law of this state, that he submit to urinalysis and that he report to the Office of Adult Probation as directed. The defendant thereafter was arrested on various drug charges and then was separately charged with violation of probation. In the affidavit that his probation officer, F, prepared as part of the warrant application for the defendant's arrest, F incorporated the facts that were stated in the police report concerning the drug charges and the crimes with which the defendant was charged. F also averred that the defendant had failed on eight occasions to report to the Office of Adult Probation as directed and that a urine sample the defendant provided had tested positive for the presence of marijuana. The state thereafter informed the defendant that it intended to try the violation of probation case before it tried the drug charges. When the probation violation case was called for trial, the state informed the court that it did not intend to offer facts from the drug case and that the basis of the probation violation case was going to be the urinalysis and the defendant's failure to report to the probation office. F then testified about the defendant's failure to keep the eight appointments with the probation office and the urine sample, and the defendant admitted in the hearing that he had smoked marijuana. After the state rested, it informed the court that it likely would present evidence as to the drug charges when that case began during the next court proceeding and moved to open the violation of probation hearing. The trial court granted the state's motion to open the violation of probation proceeding, during which the state provided the defendant with photographs of the scene of the drug crimes, and the state and the defendant thereafter presented evidence as to the drug charges, which the court dismissed at the end of the hearing. The court found that the defendant had violated the conditions of his probation that required that he report to the probation office as directed and that, in testing positive for the presence of marijuana, he had violated the law relative to possession of a controlled substance. The court further found that the defendant had violated the criminal laws of the state with regard to various drug offenses with which he had not been charged. *Held*:

1. The defendant's claim that the evidence was insufficient for the trial court to find that he violated his probation was moot and, thus, had to be dismissed, as there was no practical relief this court could grant him; the court found that the defendant violated the criminal laws of this state by possessing a controlled substance when he provided a urine sample that tested positive for the presence of marijuana, the defendant, who did not challenge that finding or his sentence on appeal, admitted during trial that he smoked marijuana, and, thus, this court disregarded the trial court's incorrect finding that he violated criminal laws that were not included in F's arrest warrant application.

2. The defendant could not prevail on his unpreserved claim that the state violated the rule of *Brady* v. *Maryland* (373 U.S. 83) by failing to disclose to him photographs of the scene of the drug crimes, as the defendant failed to demonstrate that the photographs were favorable to him and how he was harmed or prejudiced by their late disclosure; although the state disclosed to the defendant photographs of the crime scene after having previously stated in court that there were no such photographs in its file, the defendant failed to object to the admission of the photographs into evidence, the court made no finding that he was prejudiced by the late disclosure, and one of the photographs that was admitted was cumulative of other testimony.

3. This court found unavailing the defendant's unpreserved claim that he was denied due process and a fair trial, which was based on his assertion that the state failed to adhere to the trial court's order to file a motion to proceed with the probation violation case before it tried the drug charges; contrary to the defendant's claim that he did not know that the probation violation case was to be tried first, the court had informed him that it was to be tried first, the state had made known its intention to do so in his presence on several occasions in court, the court addressed the defendant's concerns about the timing of the proceedings, he did not explain how the trial of the probation violation case before the drug case harmed him or violated his constitutional rights, and, had he been convicted of the drug charges, he faced a sentence of more than forty years in prison.

4. The defendant had notice of the nature of the charges against him and, thus, he was not denied his constitutional right to notice of those charges: the conditions of probation that the defendant signed required that he not violate the laws of this state, he was informed in court of the drug charges and given a copy of the police report that listed the crimes with which he was charged after his arrest in the drug case, and he had a copy of F's arrest warrant application that averred that he tested positive for marijuana and failed to report as directed to the probation office, which he admitted to in court; moreover, the defendant's unpreserved claim that his rights were violated as a result of the state's failure to file a bill of particulars was meritless, the defendant having sought a bill of particulars in the drug case rather than in the probation violation case.

(<em>One judge concurring separately</em>)

5. The trial court's comments during the proceedings did not violate the Code of Judicial Conduct, and the court did not abuse its discretion when it granted the state's motion to open the violation of probation case to present evidence of the drug charges:

a. The trial court did not violate the rule (2.10 (a)) of the Code of Judicial Conduct applicable to public statements by a judge when it commented during the probation violation proceeding about the state's options regarding the drug charges; rule 2.10 (a) pertains to extrajudicial comments, not to statements made by the court during a proceeding before it, and the statements the court made affected the time that it heard the evidence and did not affect the outcome of the violation of probation proceedings.

b. The defendant did not demonstrate that he was prejudiced when the trial court permitted the state to open the evidence, as he did not move to dismiss the violation of probation charge, he was afforded time to subpoena and call witnesses and to cross-examine the state's witnesses, and the court stated that he was on notice that he was charged with violating the condition of his probation that he not violate any law of this state and that the court could consider evidence presented at the criminal trial when determining his sentence.

Argued February 19—officially released August 4, 2020

<em>Procedural History</em>

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of Waterbury, where the matter was tried to the court, *K. Murphy, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Appeal dismissed in part; affirmed.*

*Anthony D. Orr*, self-represented, the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. In this violation of probation case, the self-represented defendant, Anthony D. Orr,[1] appeals from the judgment rendered by the trial court after it found him in violation of his probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that his state and federal constitutional rights to due process, to a fair trial, and to be convicted upon sufficient evidence were violated.[2] Specifically, he claims that (1) there was insufficient evidence pursuant to which the court could find by a preponderance of the evidence that he had violated the terms of his probation; (2) the court found that he had violated state laws with which he had not been charged; (3) the state suppressed evidence in violation of *Brady*;[3] (4) the trial court abused its discretion by permitting the state to try the violation of probation case before it tried a criminal case that was then pending against him; (5) he was denied due process because he did not know the nature of the charges against him; and (6) the court violated the Code of Judicial Conduct. With respect to each of his claims, the defendant has requested that we review them pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[4] the plain error doctrine,[5] or for abuse of discretion. On the basis of our review of the record, the briefs, and arguments of the parties, we conclude that the defendant's claim of insufficient evidence is moot and his purported constitutional claims fail under the third prong of *Golding* because the claimed constitutional violations did not exist and the defendant was not denied due process or a fair trial. We, therefore, dismiss the defendant's claim of insufficient evidence and otherwise affirm the judgment of the trial court.

A summary of the facts underlying the defendant's appeal follows. On February 19, 2009, the defendant, who had been found guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), was sentenced to twelve years of incarceration, execution suspended after seven years, and five years of probation. In August, 2014, the defendant completed the incarceration portion of his sentence and was released on probation. On September 4, 2014, the defendant met with his probation officer, Timothy Fenn, and signed conditions of probation that required him, among other things, (1) not to violate any criminal law of this state, (2) to submit to urinalysis, (3) to report to the Office of Adult Probation as directed, and (4) to inform his probation officer if he were arrested.

On October 6, 2016, the defendant was arrested in Waterbury and charged with two counts of possession of narcotics with intent to sell, operation of a drug factory, possession of less than four ounces of marijuana, and interfering with a search. The defendant's

arrest resulted from an investigation undertaken by the Waterbury police into the sale of narcotics by Jermaine Robinson and an apartment at 119 Angel Drive in Waterbury (apartment). Following the defendant's arrest, Fenn applied for a warrant for his separate arrest on the ground that the defendant had violated his probation. The defendant was arrested in November, 2016, and charged with violation of probation pursuant to § 53a-32. The defendant's violation of probation hearing was held in June, 2017. After the court, *K. Murphy, J.*, found that the defendant had violated the conditions of his probation and that his rehabilitation level was minimal, the court revoked his probation and sentenced the defendant to five years of imprisonment.[6] The defendant appealed.

In the section of his brief concerning the nature of the proceedings, the defendant stated: "On June 16, 2017, the court found the defendant violated condition #1 of probation, and based on that finding sentenced the defendant to [five years of] imprisonment." The defendant's statement is inaccurate. Although the court first had to determine whether the defendant had violated the conditions of his probation, the court sentenced the defendant to five years of incarceration because, during the dispositional phase of the proceeding, the court found that the defendant's rehabilitation level was minimal and the beneficial purposes of probation were no longer being met. In view of the defendant's lack of understanding regarding the violation of probation process, we set forth, in general and in detail, the law regarding violation of probation proceedings before we address his specific claims.

Section 53a-32, the probation violation statute, provides in relevant part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . . (c) [U]pon an arrest by warrant . . . the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation . . . . (d) If such violation is established, the court may . . . extend the period of probation . . . . No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

"All that is required for revocation of probation is that the court be satisfied that the probationer has abused the opportunity given him to avoid incarceration. . . . Moreover, even though revocation is based upon [criminal] conduct, the [c]onstitution does not require that proof of such conduct be sufficient to sus-

tain a criminal conviction." (Citations omitted.) *Roberson* v. *Connecticut*, 501 F.2d 305, 308 (2d Cir. 1974). A probationer whose condition of probation requires that the probationer not violate any criminal law *may violate that condition without being convicted of a crime.* See id.

"The *primary purpose of a probation proceeding* is to determine whether the defendant is complying with the terms of his probation. . . . Appellate review distills to a review of the reasonableness of two findings, whether there was a violation of a condition of probation, and whether probation should be revoked because its rehabilitative purposes are no longer being served." (Citation omitted; emphasis added.) *State* v. *Baxter*, 19 Conn. App. 304, 321, 563 A.2d 721 (1989). "While the defendant is on probation, he remains in the legal custody and under the control of the [Commissioner] of [C]orrection. A [probation] revocation proceeding is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring to useful lives those placed in the custody of the [Commissioner of Correction]." (Internal quotation marks omitted.) *Payne* v. *Robinson*, 10 Conn. App. 395, 401, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988).

Practice Book § 43-29 provides in relevant part that, unless the revocation of probation is based upon a conviction for a new offense, "proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit . . . showing probable cause to believe that the defendant has violated any of the conditions of the defendant's probation . . . . At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. *If the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law.* . . ." (Emphasis added.)

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements of revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral

hearing body, and a written statement as to the evidence for and reasons for [probation] violation." (Citations omitted; internal quotation marks omitted.) *State* v. *Gauthier*, 73 Conn. App. 781, 789, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

"Due process requires, at a minimum, that an individual receive notice of probation conditions . . . to ensure that the probationer understands the precise terms of his obligations and that he risks termination of his probation if he fails to meet those obligations. Written conditions of probation formally imposed by a court order usually provide notice sufficient to satisfy due process. . . . Where criminal activity forms the basis for the revocation of probation, the law imputes to the probationer the knowledge that further criminal transgressions will result in a condition violation and the due process notice requirement is similarly met. An inherent condition of any probation is that the probationer not commit further violations of the criminal law while on probation." (Footnote omitted; internal quotation marks omitted.) *State* v. *Reilly*, 60 Conn. App. 716, 728, 760 A.2d 1001 (2000). Recitation of the particular charges, both before and during the probation violation hearing, is sufficient notice to the defendant. *State* v. *Hooks*, 80 Conn. App. 75, 79, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003); see also *State* v. *Pierce*, 64 Conn. App. 208, 215, 779 A.2d 233 (2001) (at probation violation hearing, in which testimony was offered concerning entire incident, defendant was made aware, both before and during hearing, of evidence in support of charges).

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Corringham*, 155 Conn. App. 830, 837–38, 110 A.3d 535 (2015).

"The standard of review in violation of probation matters is well settled. To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is enti-

tled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 838. "A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Repetti*, 60 Conn. App. 614, 619, 760 A.2d 964, cert. denied, 255 Conn. 923, 763 A.2d 1043 (2000).

"Our law does not require the state to prove that *all* conditions alleged were violated; *it is sufficient to prove that one was violated.*" (Emphasis added.) *State* v. *Widlak*, 74 Conn. App. 364, 370, 812 A.2d 134 (2002), cert. denied, 264 Conn. 902, 823 A.2d 1222 (2003). "It is clear that a finding of a conviction or *the commission of the act is sufficient to support a revocation of probation.*" (Emphasis added.) *Payne* v. *Robinson*, supra, 10 Conn. App. 403.

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender . . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Citation omitted; internal quotation marks omitted.) *State* v. *Altajir*, 123 Conn. App. 674, 688, 2 A.3d 1024 (2010), aff'd, 303 Conn. 304, 33 A.3d 193 (2012). "[A] defendant who seeks to reverse the exercise of judicial discretion . . . assumes a heavy burden . . . ." (Internal quotation marks omitted.) *State* v. *Repetti*, supra, 60 Conn. App. 620.

A detailed recitation of the facts is necessary to place in context the claims that the defendant has raised on appeal.[7] When the defendant was arrested by the Waterbury police on October 6, 2016, he was charged with operation of a drug factory in violation of General Statutes § 21a-277 (c), possession of narcotics with intent to sell in violation of General Statutes § 21a-

278 (a), possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), possession of less than four ounces of marijuana in violation of General Statutes § 21a-279 (a) (1)., and interfering with a search in violation of General Statutes § 54-33d (drug charges). After the defendant's arrest on the drug charges, Fenn filed an application for the defendant's arrest for violation of probation that included an affidavit in which Fenn incorporated the facts stated in the police report and the drug crimes with which the defendant had been charged.[8] The defendant was arrested for violation of probation in November, 2016.

The drug charges were filed in the judicial district of Waterbury; the probation violation charge was filed in Bridgeport in the judicial district of Fairfield. On January 19, 2017, the court, *Fasano*, *J.*, canvassed the defendant and granted his request to represent himself on the drug charges. At that hearing, Maureen Platt, the state's attorney, informed the defendant of the state's intention to try the violation of probation charge before it tried the drug charges. On March 1, 2017, in Bridgeport, the defendant appeared before the court, *Devlin*, *J.*, on the state's motion to transfer the violation of probation charge to Waterbury. Initially, the defendant opposed the transfer, but following a colloquy with Judge Devlin,[9] the defendant agreed to the transfer.

On March 27, 2017, in Waterbury, Judge Fasano again canvassed the defendant and granted his request to represent himself in the violation of probation case. The defendant again stated that he wanted the drug charges to be tried before the violation of probation charge. The court ordered the state to file a motion to proceed with the probation of violation case before the drug charges and put both cases on the trial list. On June 5, 2017, the defendant filed a motion for a speedy trial.[10]

The probation violation case was called for trial on June 14, 2017. At that time, the defendant represented to Judge Murphy that he had not been able to reach his witnesses. Terence D. Mariani, senior assistant state's attorney,[11] then stated: "The basis for the violation included a new arrest. I think those witnesses [the defendant] mentioned may be relevant to that. The state at the violation of probation hearing does not intend to put on facts from [the drug] case. . . .

"The Court: So, you're withdrawing that as a potential violation of his probation, are you?

"[Mariani]: Yes. It's in the warrant. So, I'm not technically withdrawing it. I'm highlighting for the fact the basis of the violation is going to be dirty urines and failure to report, which are also mentioned in the warrant."

When the presentation of evidence commenced, the state presented testimony from Fenn that the defendant failed to keep eight appointments at the Office of Adult

Probation as directed and that his January 20, 2015 urine sample tested positive for the presence of marijuana. When confronted with the results of the urine analysis, the defendant admitted that he had smoked marijuana. The state then rested. Prior to that day, the defendant had not been able to locate his witnesses, but with the assistance of his standby counsel, Tashun Bowden-Lewis, he issued subpoenas that morning. The court informed the defendant that the subpoenas had not been issued eighteen hours in advance of the time for the person summoned to appear[12] and that the subpoenas were not yet binding, and, therefore, the witnesses would not appear that day. The court then adjourned for the luncheon recess.

When the hearing reconvened, the court stated: "Let me just throw something out. We are in the process of this hearing. It could be reopened. I will indicate on the record that, based on the evidence I've heard thus far, I would be inclined to find that [the defendant] violated his probation, but I would also be disinclined to actually sentence him to any jail time. I'm just telling you. And the reason I say that is because, to me, if this is the extent of the state's violation, this is not a five-years-to-serve violation. On the other hand, if I were convinced by the preponderance of the evidence that the defendant was committing crimes while he was on probation, then I would probably give him the maximum."

Mariani then stated: "[M]aybe I should have said this earlier. The state's intention was to present the violation evidence, which I have done, and then return the probation officer—some judges do it in a bifurcated hearing—whether or not probation serves any useful purpose at this point. There is evidence that I would like to present and argue whether or not probation serves any useful purpose through the probation officer."

The court then stated: "I'm being honest [with] both sides. If I were to rule right now, I told you what my ruling would be on the violation, and I told you what my position would be regarding the appropriate sentence. *Now, this hearing is not over yet. And there still is a pending case.* I'm aware of that. But I don't know the details of that case. So, Mr. Orr, I've given you a little indication. Ordinarily, I wouldn't do that on the record, but you're representing yourself. We can only communicate on the record. So, I'm just sort of telling you what I'm thinking. That doesn't mean that after, if you put on a witness, you could convince me that you didn't violate your probation. I don't know that you could, but you might. . . . [W]hat I'm saying is, I think there is sufficient evidence to believe you violated the probation, but from what I understand, based on what I've heard, this was your first violation. And so, I probably, at this point now, as I said, when we first started, the state has the opportunity at the time of the sentencing,

as you do, to convince me that probation would not serve any useful purpose and that a jail sentence is appropriate. . . . So, anyway, do you still wish to be able to put on the witness[es] in regard to whether you violated your probation or not?" (Emphasis added.) The defendant stated: "No, Your Honor."

The court continued, stating: "Okay. Here's how I would leave it: We're supposed to start jury selection [on the criminal charges] on Friday. The state has rested on the VOP[13] hearing. I would give them leave to reopen the VOP hearing if they wanted to include evidence of another crime. *It has happened that the court . . . presiding over a jury trial would listen to the evidence during the jury trial and then also make findings regarding whether you violated your probation or not.* So, I guess I'm leaving that out as a possibility. Okay. . . . I think we are right now, since the state had preliminarily rested and you wanted to present some evidence, I think the best procedure is to plan on starting jury selection on Friday." (Emphasis added; footnote added.) Thereafter, the court instructed the defendant and the state with respect to pretrial motions and the schedule for jury selection two days hence. The court also advised the defendant to consult with Bowden-Lewis.

Mariani thereafter stated: "The court knows the situation, that I came into the file this morning when [Senior Assistant State's] Attorney [Don E.] Therkildsen [Jr.] went home, or to the doctor, ill. I had originally indicated [that] we were just going to proceed on the technical violations. Given the fact I have until Friday and given the court's comments, I think the defendant should be aware he should have any witnesses available Friday morning that he thinks are necessary to dispute the facts of the underlying case because I think it is likely, given the time and the court's comments, that I will present evidence as to the allegations in the drug file."

The court stated to the defendant that the state was moving to open the violation of probation hearing and asked the defendant his position in that regard. The defendant objected to the state's opening its case. The court asked the defendant the basis of his objection, to which the defendant responded: "The state has said that they were—they rested their case on the violation, on the technical violations, and they were not pursuing the underlying [drug] charge. In pursing the underlying charge, I will have to be found guilty of violation a criminal statute." The court explained to the defendant the difference between the state's burden of proof at a criminal trial and a violation of probation hearing. The court asked the defendant whether there was any prejudice to him if the state opened the violation of probation hearing. The defendant stated: "Yes . . . I won't be able to get in contact with any witnesses. I

have no legal research to defend myself against the claim of violation of probation for whatever reason they want to reopen." The court overruled the defendant's objection, stating to the defendant that, "before you got here today at 10 or 11:15 this morning, you were under the impression this was a violation of probation hearing on everything that's indicated in the violation of probation warrant, which I understand includes both the technical violations, as well as the new crime. . . . There was an issue whether you could get a witness. Your witness was not subpoenaed for today, anyway. You were going to ask for a continuance anyway in order to present those witnesses. And really nothing has—I don't see any prejudice to you for allowing the state to reopen the file. I will say, you were aware of the nature of the violations alleged by the state prior to today, which included that you violated the laws of the state of Connecticut."

The violation of probation hearing continued on Friday, June 16, 2017, when the state presented evidence on the drug charges, including testimony from Detective Eric Medina of the Waterbury Police Department, who observed both Robinson and the defendant selling heroin in the parking lot of the apartment, and Officer Keith Shea, who arrested the defendant at the apartment soon thereafter. Shea also testified that he found on the defendant's person a glass smoking pipe used for smoking crack. Officer Mark Santopietro testified that 1960 packages of heroin were found on a coffee table adjacent to where the defendant had been sitting in the apartment. The defendant testified on his own behalf and presented testimony from two witnesses, Alexander Epps, the operator of one of the vehicles, to whom the defendant sold narcotics, and Markesha Dennis, a friend of the defendant, who leased the apartment.

At the conclusion of the adjudicatory portion of the violation of probation proceeding, the court found that the defendant had violated the conditions of his probation. The court stated that there are "really two sections of your probation conditions that are applicable here. And I'm drawing this from state's exhibit 3. One is, do not violate any criminal laws of the United States, any other state and the state of Connecticut. And, secondly, report as the probation officer tells you. I find that you did violate the report as the probation officer tells you. [Fenn] testified to a number of occasions where you had an appointment to be at the probation office and you did not show. I find that . . . was very credible."[14]

In addition, the court stated: "I also find that, in testing positive for marijuana, THC, there is circumstantial evidence that the *defendant violated the law as far as possession of* [*a*] *controlled substance*. The state has put less weight on that type of violation of the law, but *it is still against the law in the state of Connecticut to possess marijuana*. So, I find by a fair preponderance

of the evidence that the defendant has violated that portion. [The defendant] has admitted to violating that law, as far as possession of cocaine, but that was not alleged as a basis. So, while I do believe that the state's proved that, I'm not really relying on that as a basis for my findings.[15]

"I think the biggest finding I had here, though, is, I do find that the defendant has violated the criminal law of the state of Connecticut in regard to conspiracy to sell narcotics, § 53a—I want to say 48. *I should have written down the statute.*[16] And, by way of § 21a-277 (a), he has violated conspiracy to possess with intent to sell in violation of Connecticut 53a-48 and 21a-277 (a). He has violated the statute charging him with possession with intent to sell, violation of § 21a-277 (a). He has violated the statute for 21a-267 (a), possession of drug paraphernalia."[17] (Emphasis added; footnotes added.)

With respect to the dispositional portion of the proceedings, Mariani argued that, given the defendant's criminal record, continued probation would serve no useful purpose. In 2005, the defendant was convicted of assault in the first degree and given a six year jail sentence, suspended after thirty months. The defendant violated his probation and was discharged from it unsuccessfully. On February 19, 2009, while on probation for assault in the first degree, the defendant was arrested and convicted of possession of a pistol without a permit. He was given a five year prison sentence. The defendant was convicted of robbery in the first degree, which was the sentence under which he was then being held. Mariani argued that the defendant had a significant criminal history but was given the benefit of probation. During his probation, however, the defendant failed to report to his probation officer, used crack cocaine, and became involved in the selling of narcotics. Mariani concluded that the defendant was not a person who should be on probation any longer, noting that overdoses were becoming the primary cause of death among young people in Waterbury. For the defendant to be involved in that kind of activity while he was on probation indicated to Mariani that the defendant was not the kind of person who should be on probation. Mariani further argued that the state was trying to rehabilitate the defendant and give him opportunities to help himself, but primarily the state was protecting the community.

The court revoked the defendant's probation, stating to the defendant: "Based on your . . . one prior violation of probation, two very serious felonies, [and] now being involved in what I view as also a very serious felony, I feel like the rehabilitation level is minimal. And, I think, with your record and with the violations that have been established, the appropriate sentence is you are now . . . committed to the custody of the

Commissioner of Correction for a period of five years to serve." The defendant appealed.

I

The defendant claims that there was insufficient evidence by which the court could find that he had "violated condition # 1 of probation," i.e., that he not violate the laws of this state.[18] Specifically the defendant claims that there was insufficient evidence by which the court could find "by the reliable and probative evidence standard and the fair preponderance of the evidence that he was selling narcotics," citing *State* v. *Davis*, 84 Conn. App. 505, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004). We need not address the defendant's claim regarding the possession and sale of narcotics because we agree with the defendant's separate second claim that the court found that he violated state narcotics laws with which he had not been charged. Moreover, the defendant cannot prevail because the court found that he possessed marijuana, as charged, and thus violated the laws of the state. We, therefore, dismiss the defendant's claim of insufficient evidence as moot, as there is no relief that we can grant him.

The following facts inform our decision. When the defendant met with Fenn on September 4, 2014, he signed conditions of probation. "Condition 1" provided: "Do not violate any criminal law of the United States, this state or any other state or territory." On October 6, 2016, the defendant was arrested in Waterbury and charged with violations of §§ 21a-277 (c), 21a-278 (a), 21a-278 (b), 21a-279 (a) (1) and 54-33d. Fenn set forth those charges in the application for the defendant's arrest for violation of probation. The trial court found that the defendant violated §§ 53a-48 and 21a-277 (a), and §§ 21a-277 (a) and 21a-267 (a), which were not included in the application for the arrest warrant.[19] "[A] defendant cannot be found in violation of probation on grounds other than those with which he is charged . . . ." *State* v. *Carey*, 30 Conn. App. 346, 349, 620 A.2d 201 (1993), rev'd on other grounds, 228 Conn. 487, 636 A.2d 840 (1994). We, therefore, will disregard the court's findings on the drug charges, as this court did in *Carey*, where the trial court made a similar error in finding that the probationer had violated a condition of probation that was not alleged.[20] See id.

The application for the defendant's arrest for violation of probation also alleged that the defendant rendered a urine sample that tested positive for the presence of THC. The court found that in testing positive for marijuana, THC, there was circumstantial evidence that the defendant violated the law because he possessed a controlled substance. The court therefore found that that the defendant violated "condition 1" of his conditions of probation. "Our law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated."

*State* v. *Widlak*, supra, 74 Conn. App. 370. "It is clear that a finding of . . . the commission of the act is sufficient to support a revocation of probation." *Payne* v. *Robinson*, supra, 10 Conn. App. 403.

In his affidavit in support of the violation of probation arrest warrant, Fenn alleged that the defendant produced a urine sample that tested positive for the presence of marijuana, a controlled substance. The defendant admitted that he smoked marijuana. The court found that the defendant violated condition 1 of his probation on the basis of his having possessed a controlled substance. The defendant has not challenged that finding on appeal. The defendant, therefore, stands in violation of the first condition of his probation on the basis of possession of a controlled substance.

Mootness implicates this court's subject matter and raises a question of law subject to plenary review. See *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 208, 177 A.3d 1144 (2018). Jurisdiction is a threshold matter and may be raised at any time, including sua sponte by the court. See *In re Shawn S.*, 66 Conn. App. 305, 309, 784 A.2d 405 (2001), aff'd, 262 Conn. 155, 810 A.2d 799 (2002). "It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Burbank* v. *Board of Education*, 299 Conn. 833, 839, 11 A.3d 658 (2011). "The test for determining mootness of an [issue on] appeal is whether there is any practical relief this court can grant the appellant. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Citation omitted; internal quotation marks omitted.) *Edgewood Village, Inc.* v. *Housing Authority*, 54 Conn. App. 164, 167, 734 A.2d 589 (1999). In the present case, the court found that the defendant violated the laws of the state by possessing a controlled substance, a finding the defendant has not challenged. He also has not challenged his sentence on appeal. The defendant, therefore, stands in violation of the conditions of his probation by his own admission and there is no relief that can be granted to him. The claim of insufficient evidence is moot and, therefore, must be dismissed.

## II

The defendant's third claim is that the state violated *Brady* v. *Maryland*, supra, 373 U.S. 83, by failing to disclose to him photographs of the crime scene and contraband.[21] We do not agree.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." Id., 87. "To prevail on a *Brady* claim, the defendant bears a heavy burden to establish: (1) that the prosecution suppressed evidence; (2) that the evidence was *favorable to the defense*; and (3) that it was material." (Emphasis added; internal quotation marks omitted.) *State* v. *Guerrera*, 167 Conn. App. 74, 87, 142 A.3d 447 (2016), aff'd, 331 Conn. 628, 206 A.3d 160 (2019). "If . . . the [defendant] has failed to meet his burden as to one of the three prongs of the *Brady* test, then we must conclude that a *Brady* violation has not occurred." *Morant* v. *Commissioner of Correction*, 117 Conn. App. 279, 296, 979 A.2d 507, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009). In the present case, the defendant has failed to carry his burden because he did not claim or demonstrate that the evidence at issue was favorable to him.

The following procedural history is relevant to the defendant's claim. On March 27, 2017, Judge Fasano held a hearing on a number of the defendant's pretrial motions in the criminal case, including a motion for discovery. Bowden-Lewis informed the court that she had given the defendant a copy of everything that was in her file, including the search and seizure warrant, the police report, and the arrest warrant. Platt represented that the defendant did not have a copy of his arrest record, which could not be given to him without a court order. Judge Fasano ordered the state to provide the defendant with a copy of his criminal history, which Platt agreed to do. The court stated that it appeared that everything that the defendant was entitled to had been given to him, but the defendant argued that "they said I was in possession of heroin. I don't have photocopies of the heroin or anything else." The court explained to the defendant that he would not get "copies of heroin" and that evidence "would be offered to the extent [that the] state deems it appropriate" at the time of trial. The defendant requested "a picture," and Platt represented that "[t]here were no photos. My inspector talked to the Waterbury Police Department on October twenty-fifth. According to the notes in the file, there were no photos."

On June 16, 2017, the second day of the violation of probation hearing, Mariani stated that he had given the defendant, through Bowden-Lewis, "some photographs and . . . one police report."[22] Bowden-Lewis represented that she had given the documents to the defendant. The defendant did not challenge the timeliness of the disclosure, nor did he claim that the state was in violation of *Brady*. When the state presented its evidence, it introduced four photographs: a Google aerial photograph of the apartment complex, the front door of the apartment, the living room, and the white bag containing the packages of heroin. The defendant did not object to the admission of the evidence on either timeliness or *Brady* grounds. Because the defendant

did not object to the photographs being placed into evidence, Judge Murphy did not make a factual finding that the defendant was prejudiced by the delayed disclosure of the photographs. The defendant's claim, therefore, was not preserved for appeal. The defendant seeks *Golding* review of his claim. We will review the claim because the record is adequate for review and the claim is of constitutional magnitude. The defendant, however, cannot prevail because his claim fails to satisfy the third prong of *Golding*.

On appeal, the defendant argues that the " 'state' lied about the photos and then deprived [him] of his rights when they used the photos to secure his conviction." The state has responded that "there were no photographs of the evidence seized, and no such photographs were introduced into evidence." The record indicates otherwise. On March 27, 2017, Platt represented that the state's investigator obtained no photographs from the Waterbury Police Department, but on June 14, 2017, Mariani gave the defendant photographs. The defendant did not object to the disclosure of the photographs at that time and did not ask for a continuance to examine the photographs. The court made no finding that the defendant was prejudiced by the state's late disclosure of the photographs. Although the photographs may not have come into the state's possession until the time of trial, the record discloses that the state's representation on appeal that no photographs of the evidence seized were placed into evidence is inaccurate. The state placed a photograph of the white bag with the heroin into evidence. The defendant, however, cannot prevail on his *Brady* claim for two reasons. First, he has failed to demonstrate that the photographs were favorable to him. Second, he has failed to explain how he was harmed or prejudiced by the late disclosure of the photographs.

"Evidence is not suppressed within the meaning of *Brady* . . . if it is disclosed at trial as it was here." (Internal quotation marks omitted.) *State* v. *Stinson*, 33 Conn. App. 116, 120, 633 A.2d 728 (1993). A "defendant must demonstrate that the timing of the disclosure prejudiced him to the extent that he was deprived of a fair trial. . . . The central issue in this claim, therefore, is whether the evidence was disclosed in sufficient time for the defendant to have effectively used it at trial. . . . This is essentially a factual determination for the trial court." (Citations omitted; internal quotation marks omitted.) Id. In the present case, the defendant failed to object to the admission of the photographs on any ground, and the trial court made no finding that the defendant was prejudiced by the late disclosure. On appeal, the defendant has not demonstrated that he was harmed by the late disclosure of the photographs. In addition, the photograph of the white bag containing the packages of heroin was cumulative of Shea's testimony. For the foregoing reasons, the defendant's claim

regarding the photographs fails.

### III

The defendant's fourth claim is that he was deprived of due process and the right to a fair trial because the state failed to file a motion to proceed with the violation of probation case before it tried the drug charges. We disagree.

The following procedural history is relevant to the defendant's claim. On January 19, 2017, Platt appeared before Judge Fasano and stated in the defendant's presence that the state intended to have the violation of probation case transferred to Waterbury from Bridgeport. Platt also stated that the state intended to proceed to trial on the violation of probation case before trying the drug charges.

On March 27, 2017, the parties appeared before Judge Fasano to address the pretrial motions that the defendant had filed. The court first canvassed the defendant, who wanted to represent himself in the violation of probation case. During the canvass, the court stated to the defendant that the state often "would proceed on the violation of probation before [the criminal case] because the exposure is there, and it's a lot easier to do; it is not proof beyond a reasonable doubt. . . . [I]t's proof by a preponderance of the evidence." The defendant stated that he understood the preponderance of the evidence standard, but he also stated that, "the violation of probation being heard first, due process requires that I not be punished before I have the chance to . . . argue my case. So, violation of probation is a punishment." The court explained that a violation of probation proceeding was a hearing, not a full trial. The defendant stated that he understood. The court explained the challenges facing the defendant if he represented himself, and the court found that the defendant understood the nature of the proceedings and the sentence that could be imposed on the drug charges. The court also found that the defendant knowingly, intelligently, and with full awareness of the consequences, had waived his right to counsel.

The court noted that the defendant had pleaded not guilty to the violation of probation charge on December 14, 2016. Platt inquired whether the defendant had waived the rule that violation of probation hearings be held within 120 days of the filing of charges. See General Statutes § 53a–32 (c). The defendant was not willing to have the violation of probation hearing set down immediately and waived the 120 day requirement. The court heard the defendant's motion to reduce his bail and denied it. Following some colloquy, the defendant stated that he wanted his cases to go on the trial docket. Platt stated that the state is "going to ask to do the violation of probation first." The court then stated: "It's pretty clear it's going to be a trial case, so I'll place the

matter on trial. . . . Because it's a [self-represented] situation, if [the state is] moving to have the violation of probation first, I want a motion filed so he can address it." In response, Platt stated: "Yes."[23]

On June 5, 2017, the defendant filed a motion for a speedy trial in the drug case, but he claims that on June 8, 2017, the courthouse clerk filed the motion for a speedy trial in the violation of probation file. Judge Fasano held a hearing on the defendant's speedy trial motion on June 8, 2017. The court granted the motion for a speedy trial and stated that all matters were being set down for trial, including the violation of probation, which would be held before Judge Murphy starting on June 14, 2017. The defendant stated: "Okay." When he appeared before Judge Murphy on June 14, 2017, the defendant did not object to proceeding with the violation of probation hearing but stated that he needed help to call witnesses. Judge Murphy addressed the defendant's concerns regarding subpoenas for his witnesses.

On appeal, the defendant claims that the courthouse clerk filed his speedy trial motion under the wrong docket number and that the state's failure to file a motion to proceed with the violation of probation hearing before the trial on the drug charges violated his constitutional rights. He argues that the trial on the drug charges, rather than the violation of probation proceeding, should have started on June 14, 2017, and that he did not know that the violation of probation hearing was to be held on that date. As to his claim that he did not know that the violation of probation proceeding was to take place on June 14, 2017, the record is to the contrary. On June 8, 2017, Judge Fasano informed the defendant that the violation of probation hearing was going to be held on June 14, 2017, before Judge Murphy. When Judge Murphy permitted the state to open its case, he stated that the defendant knew when he appeared in court on June 14, 2017, that he was there for the violation of probation hearing.

"[T]here is no requirement that entitles the defendant to choose the order of his proceedings." *State* v. *Easton*, 111 Conn. App. 538, 542, 959 A.2d 1085 (2008), cert. denied, 290 Conn. 916, 965 A.2d 555 (2009). The law does not require that a violation of probation proceeding be deferred until after the disposition of the new criminal charges. See *Payne* v. *Robinson*, supra, 10 Conn. App. 403.

We do not condone the state's failure to obey the court's order that it file a motion to proceed with the violation of probation hearing before trying the drug case. The state, however, had made known its intention to do so in the defendant's presence on several occasions. Despite his claim that his constitutional rights were violated, the defendant has not explained how he was harmed or how his constitutional rights were

violated by trying the violation of probation case before the drug charges. When Judge Fasano ordered the state to file a motion to proceed with the violation of probation case first, he stated that the defendant was representing himself and should be able to address the issue. The defendant was then given the opportunity to address the timing of the probation violation and drug case proceedings. The court heard the defendant's reasons why he wanted the drug charges to be tried first and addressed the defendant's concerns. The court explained that the state generally will proceed on a violation of probation case before trying the criminal charges because the charge of probation violation is easier to prove. The court also explained to the defendant the burdens of proof that apply in probation violation proceedings and criminal trials.[24]

As we concluded in part I of this opinion, there was substantial evidence that the defendant violated the terms of his probation by failing to report to the Office of Adult Probation as directed, and violating the criminal law of the state by possessing a controlled substance. Judge Murphy also found that the beneficial aspects of the defendant's probation were not being met. The defendant was sentenced to serve five years of incarceration, the balance of the sentence imposed in 2009 when he was found guilty of robbery in the first degree. Had the defendant been tried on the drug charges, he potentially faced a sentence of more than forty years in prison; see part IV of this opinion; and revocation of his probation. As things turned out, after the court sentenced the defendant, the state indicated that it would enter a nolle prosequi on the drug charges that were scheduled to be tried that week. The defendant moved that the drug charges be dismissed; the state did not object. Judge Murphy granted the defendant's motion to dismiss the drug charges, resulting in a significant benefit to the defendant. Thus, the defendant's claim that his constitutional rights to due process and a fair trial were violated because the state failed to file a motion to proceed with the violation of probation hearing before it tried the drug charges cannot succeed.

IV

The defendant's fifth claim is that he did not have notice of the nature of the charges against him, thereby denying him of the constitutional right to be informed of the nature of the charges against him. This is so, the defendant claims, because (1) the state failed to file a bill of particulars as ordered by the court on March 27, 2017, and (2) the police report and violation of probation warrant were vague. We do not agree.

The following procedural history is relevant to the defendant's claim. On January 19, 2017, when the defendant was in court on the drug charges, Judge Fasano asked Platt to inform the defendant of "the total exposure," or potential incarceration, he faced on the drug

charges. Platt placed on the record in the defendant's presence the crimes with which the defendant was charged and the potential incarceration under each charge. The court then summarized the defendant's maximum exposure as approximately forty-three years in prison, in addition to possible fines. Bowden-Lewis stated on the record that she would give the defendant the contents of her file, including the police report and the search warrant in the drug case. The defendant also had a copy of Fenn's detailed application for an arrest warrant for violation of probation. At the state's request, the court ordered that the defendant be given a copy of his criminal record.

The defendant's claim that his rights were violated by the state's failure to file a bill of particulars in the present matter is without merit. The defendant filed a motion for a bill of particulars in the drug case, and on March 27, 2017, Judge Fasano ordered the state to file a bill of particulars in the drug case, not the present violation of probation case. The defendant was representing himself in the drug case and would have received the bill of particulars in that case.

In his brief, the defendant states that the "police report and [violation of probation] warrant are so vague, there is not language describing any [Connecticut General Statutes] criminal violation for the [self-represented] defendant to prepare his defense." Our review of the record discloses that the documents were, in fact, quite detailed. The police report of the defendant's arrest on October 6, 2016, is nine pages in length, and it identifies the defendant as an arrestee charged with operation of a drug factory, possession with intent to sell/dispense, possession with intent to sell, possession of fewer than four ounces of marijuana, and interfering with a search. Each charge included its codification in the General Statutes. The report describes in detail the defendant's sale of drugs to the operators of two vehicles in the parking lot of the apartment and the events that transpired when the police executed the search warrant on the apartment. Fenn's application for an arrest warrant is a three page, single-spaced document describing the defendant's probation, the conditions of his probation, his failure to report to the Office of Adult Probation as directed, the defendant's urine sample that tested positive for marijuana, and a detailed recitation of the facts contained in the police report that resulted in the defendant's arrest in Waterbury on October 6, 2016.

"Where criminal activity forms the basis for the revocation of probation, the law imputes to the probationer the knowledge that further criminal transgressions will result in a condition violation and the due process notice requirement is similarly met." *State* v. *Reilly*, supra, 60 Conn. App. 728. Section 53a-32 (c) requires that "[u]pon notification by the probation officer of the

arrest of the defendant or upon an arrest by warrant . . . the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation . . . ." The state can fulfill the requirement to inform the probationer by providing him with the arrest warrant and supporting affidavits, the information, and the state's recitation of the underlying criminal charge in open court. See, e.g., *State* v. *Iovanna*, 80 Conn. App. 220, 221–22, 834 A.2d 742 (2003). A probationer receives notice of the underlying charges when the violation of probation warrant fully describes the incident on which the criminal charges were based and ultimately is the basis of the court's finding of a violation of probation. *State* v. *Repetti*, supra, 60 Conn. App. 619.[25]

The record in the present case discloses that the defendant signed conditions of probation that, in part, required that he not violate the laws of this state. He was informed in open court of the drug charges against him, he was given a copy of the police report that listed the crimes with which he was charged following his arrest on October 6, 2016, and he had a copy of Fenn's application for an arrest warrant for violation of probation that averred that the defendant failed to report to the Office of Adult Probation as directed and that his urine sample tested positive for THC. Furthermore, the defendant admitted that he failed to report as required and smoked marijuana. On this record, we conclude that the defendant had notice of the nature of the charges against him, particularly that he not violate the laws of this state.

V

The defendant's last claim is that he was denied due process when the state was permitted to open its case to present evidence related to the drug charges. More specifically, the defendant claims that the court (1) violated rule 2.10 of the Code of Judicial Conduct and (2) abused its discretion by granting the state's motion to open the evidence. We disagree.

The following procedural history is relevant to the defendant's claims. The violation of probation hearing was to begin on June 14, 2017, a Wednesday. At the beginning of the proceeding, the defendant stated to Judge Murphy that he wished to call Dennis and Epps as witnesses but that he had been unable to reach them. Mariani stated that those witnesses may not be necessary at this point in the probation hearing because the state intended to present evidence only of the defendant's failure to report to Fenn as required and that the defendant had rendered a urine sample that tested positive for marijuana. In response to Judge Murphy's question about whether the state was withdrawing the

defendant's new arrest as a violation of probation, Mariani stated: "I'm not technically withdrawing it." The defendant stated that he was under the impression that the violation of probation was going to be based on the "new arrest." He requested that there be a plea discussion.

The court responded: "Here's what's going to happen, Mr. Orr: Today [the] state's going forward on a portion of that violation of probation. I've seen many of these violation of probation warrants. They usually list what is known as technical violations first, then they list any new arrests. Apparently, what the state is saying [is], they're only proceeding today on what's known as the technical violations. *And those are legitimate bases to violate someone's probation. If they don't present evidence of the new arrest in the violation portion of the hearing, they can still say, hey, okay, now you've already found him in violation, but when you decide the appropriate sentence, we want to tell you a little bit more about the [defendant].* We want to tell you about some pending criminal cases. The state has the ability to do that during the sentencing portion of the violation of probation hearing.

"So, there are *two portions of the violation of probation hearing*: the first portion is, are you in violation of your probation. Then, once I make a decision on that, then I have to determine what the appropriate sentence is, and then I can consider things, even though . . . *the state may not have presented the evidence of the new criminal activity during the violation proceeding; they can still present evidence of other acts of misconduct, of any crimes in the sentencing proceeding. I want you to be aware of that.*" (Emphasis added.) The court then took a recess to enable the defendant to meet with Bowden-Lewis.

Following the recess, the state presented testimony from Fenn. See part I of this opinion. At the conclusion of Fenn's testimony, the state rested and the court recessed for lunch. When court reconvened, the court addressed the parties, stating: "Let me just throw something out. We are in the process of this hearing. It could be reopened. I will indicate on the record that, based on the evidence I've heard thus far, I would be inclined to find that [the defendant] violated his probation, but I would also be disinclined to actually sentence him to any jail time. I'm just telling you. And the reason I say that is because, to me, if this is the extent of the state's violation, this is not a five-year-to-serve violation. On the other hand, if I were convinced by a preponderance of the evidence that the defendant was committing crimes while he was on probation, then I would probably give him the maximum. So it's sort of an all or nothing thing for me. So you know, I'm throwing that out because, I guess what I'm saying is, I don't think that this violation of probation hearing, unless there is

going to be some significant evidence the defendant was committing a crime, I don't see this as a jail case."

Mariani indicated that it was the state's intention to present the violation of probation evidence, which it had done, and later bring the probation officer back to testify as to whether the defendant's probation was serving any useful purpose. The court informed the defendant that the state has the opportunity at the time of sentencing to convince the court that probation would not serve any useful purpose and that a jail sentence is appropriate. The court informed the parties that jury selection in the drug case was to begin on Friday. "The state has rested on the [violation of probation] hearing. I would give them leave to reopen the [violation of probation] hearing if they wanted to include evidence of another crime. It has happened that the court . . . presiding over a jury trial would listen to the evidence during the jury trial and then also make findings regarding whether you violated your probation or not. So, I guess I'm leaving that out as a possibility."

Mariani moved to open the state's case to present evidence on the drug charges. He explained that the case had just been assigned to him that morning when the prosecutor originally assigned to the case was taken ill. Mariani stated that he had "indicated that [the state was] just going to proceed on the technical violations. Given the fact [that he] had until Friday and given the court's comments," he intended to present evidence of the underlying drug charges. The court construed Mariani's comments as a request to open the evidence. The defendant objected to the request, stating that the state had rested in the violation of probation case on the technical violations and had not pursued the underlying criminal charges. He claimed that he would be prejudiced because he would not be able to contact witnesses and had no legal research to defend himself "against the claim of violation of probation for whatever reason [the state wants] to reopen."

The court overruled the defendant's objection, stating that, "before you got here today at 10 or 11:15 this morning, you were under the impression this was a violation of probation hearing on everything that's indicated in the violation of probation warrant, which I understand includes both the technical violations, as well as the new crime. Then at 11:30 [a.m.] . . . whatever time it was, the state notified you they were not going to proceed on the criminal offense, but there really was no down time between then and when the state started their case at 12:30. There was an issue whether you could get a witness. Your witness was not subpoenaed for today, anyway. You were going to ask for a continuance anyway, in order to present those witnesses. . . . I don't see any prejudice to you for allowing the state to reopen the file. I will say you were aware of the nature of the violations alleged by the

state prior to today, which included that you violated the laws of the state of Connecticut." The court informed the defendant that he would be given an opportunity to subpoena witnesses for Friday and recessed to permit the defendant to meet with Bowden-Lewis. On Friday, the state presented evidence regarding the underlying drug charges. The defendant presented his case, during which he testified and presented two witnesses.

## A

The defendant claims that the court violated canon 2 of the Code of Judicial Conduct. He quotes rule 2.10 (a) of the code, which states in relevant part: "A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter pending . . . ." The defendant argues that the court "made a comment at the close of the state's case that caused the state to move to reopen the hearing," which rule 2.10 (a) prohibits. The defendant misunderstands the scope of the rule. Rule 2.10 (a) pertains to extrajudicial comments, not to statements made by the court during a trial, hearing or other proceeding before it. Rule 2.10 (d) provides in relevant part: "Notwithstanding the restrictions in subsection (a), a judge may make public statements in the course of official duties, may explain court procedures . . . ."

Although the defendant complains of the statements that the court made during the violation of probation proceeding, he did not distinctly set forth the explicit words or statements the court made to which he takes exception. Presumably, he takes exception to the statement: "I will indicate on the record that, based on the evidence I've heard thus far, I would be inclined to find that [the defendant] violated his probation, but I would also be disinclined to actually sentence him to any jail time. I'm just telling you. And the reason I say that is because, to me, if this is the extent of the state's violation, this is not a five-year-to-serve violation. On the other hand, if I were convinced by a preponderance of the evidence that the defendant was committing crimes while he was on probation, then I would probably give him the maximum." The court made the statement to the self-represented defendant after it explained to him that a violation of probation proceeding consists of two parts: an adjudicatory stage and a dispositional phase. The court also explained to the defendant that it could consider the evidence that it heard during the criminal trial when it turned to the dispositional stage of the violation of probation proceeding.

The court, in managing the proceeding, presented the state with options: it could hear evidence on the drug charges at that time or during the criminal trial. The court also was aware that the prosecutor who had been handling the defendant's case had been taken ill and that the adjudicatory portion of the proceedings was

being tried by a substitute. The state elected to move to open the evidence in the violation of probation hearing and later opted to nolle the drug charges. The court provided the defendant with additional time to locate witnesses and to prepare for trial. The court was the fact finder, and the statements it made after the state rested did not affect the outcome of the violation of probation proceedings. The court was going to hear the evidence related to the drug charges during the violation of probation proceeding or during the criminal trial. The court's statement affected the time that it heard the evidence, not whether it heard the evidence. The court, therefore, did not violate rule 2.10 (a) of the Code of Judicial Conduct and deny the defendant a fair trial.

B

The defendant also claims that the court abused its discretion by permitting the state to open its case and present evidence of the drug charges. We are not persuaded.

"The decision to reopen a criminal case to add further testimony lies within the sound discretion of the court, which should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impeded or defeat the ends of substantial justice. . . . The purpose . . . is to preserve the fundamental integrity of the trial's truth-finding function." (Internal quotation marks omitted.) *State* v. *Meikle*, 60 Conn. App. 802, 817, 761 A.2d 247 (2000), cert. denied, 255 Conn. 947, 769 A.2d 63 (2001). "Unless the state's offer seeks to fill an evidentiary gap in its prima facie case that was specifically called to the state's attention by the defendant's motion for acquittal . . . the trial court may permit additional evidence to be presented even though that evidence strengthens the case against the defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 96 Conn. App. 634, 643, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006). "In determining whether the court abused its discretion, we must make every reasonable presumption in favor of its action." (Internal quotation marks omitted.) Id.

On the basis of our review of the record, we conclude that the court did not abuse its discretion by permitting the state to open the violation of probation case to present evidence of the underlying drug charges against the defendant. After the state rested, the defendant did not move to have the violation of probation charge dismissed. The court found that the defendant was in technical violation of his probation but that it was not inclined to sentence him to jail. The court explicitly cautioned, however, that, although the state had not presented evidence of the drug charges during the adjudicatory portion of the proceedings, the court could consider new criminal activity and misconduct presented during the dispositional phase of the proceedings. Mariani indicated that the state intended to present

evidence of the drug charges at the time the court sentenced the defendant for violation of probation. In granting the state's motion to open the evidence, the court stated to the defendant that he was on notice that he was charged with violating the condition of probation that he not violate the laws of this state. When the defendant arrived in court on June 14, 2016, he was under the impression that the state was going to proceed on all of the allegations in the warrant application. The court explained that it could consider the evidence presented at the criminal trial when determining the sentence, that is, whether the defendant's violation of the laws of the state was serious and whether the benefits of probation were being met. The issue, therefore, is one of timing, not substance. The defendant has not demonstrated that he was prejudiced by the court's permitting the state to open the evidence. During the violation of probation proceeding, the defendant was afforded time to subpoena and call his own witnesses and to cross-examine the state's witnesses. Rather than prejudicing the defendant by permitting the state to open the evidence, the defendant received a significant benefit. When the drug charges were called for trial, Therkildsen stated that the state would enter a nolle prosequi on the drug charges.[26] For the foregoing reasons, we conclude that the court did not abuse its discretion by permitting the state to open the evidence.[27]

The appeal is dismissed with respect to the claim of insufficient evidence; the judgment is affirmed in all other respects.

In this opinion DiPENTIMA, C. J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant also represented himself in the trial court in both the violation of probation case and the criminal charges that gave rise to his violation of probation.

[2] The defendant did not analyze his state constitutional claims. Where the defendant does not advance a separate state constitutional argument, "we will limit our analysis to federal constitutional grounds." *State* v. *Guess*, 39 Conn. App. 224, 231, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995).

[3] See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

Although he requested *Golding* review, the defendant has failed entirely to provide a *Golding* analysis of any of his claims in his appellate brief. Generally, this court does not review claims that are not adequately briefed. Our "Supreme Court has often observed [that] [w]e are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.) *State* v. *Wahab*, 122 Conn. App. 537, 545, 2 A.3d 7, cert. denied, 298

Conn. 918, 4 A.3d 1230 (2010). In the present case, we nonetheless review the defendant's claims, although they are lacking legal analysis, because the self-represented defendant provided a detailed recitation of facts that elucidate his claims that he was denied his federal constitutional rights.

[5] See Practice Book § 60-5.

[6] After the defendant was sentenced for violation of probation, the state declined to try the drug charges under which the defendant faced potential incarceration in excess of forty years. Judge Murphy subsequently dismissed the drug charges.

[7] The defendant's appellate claims focus on the procedural aspects of the violation of probation proceedings and the court's finding that he possessed narcotics with intent to sell. The defendant has not raised a claim with respect to the dispositional portion of the proceedings. In other words, the defendant does not claim that the court abused its discretion by revoking his probation and sentencing him to serve five years in prison.

[8] Fenn averred in his affidavit in relevant part:

"3. That [the defendant's] probationary period started on 8/27/2014 upon his discharge from the Department of Correction and is scheduled to end on 8/27/2019. To date, [the defendant] has served approximately [two] years and [one] month of his [five] year probationary period.

"4. That on 9/4/2014, [the defendant] did review and sign his Standard and Special Conditions of Probation.

"5. That on 8/11/2015 and again on 12/15/2015, [the defendant] failed to report to the Office of Adult Probation as directed.

"6. That on 1/20/2015, [the defendant] rendered a urine sample at the Office of Adult Probation which tested positive for the presence of THC.

"7. That on 2/9/2016, 2/23/2016, 3/3/2016, 6/21/2016, 7/26/2016 and 9/20/2016 [the defendant] failed to report to the Office of Adult Probation as directed.

"8. That on 10/06/2016, [the defendant] was arrested by the Waterbury Police Department and charged with Possession with Intent to Sell (§ 21a-278) (a)+, Operation of Drug Factory (§ 21a-277 (c), Interfering with Search (§ 54-33d), Possession with Intent (§ 21a-278 (b)*+ and Possession of Marijuana less than 4 oz. (§ 21a-279 (a) (1st). After having personally reviewed the arrest warrant a summary is as follows: On 10/6/2016, Waterbury Police Department's Vice and Intelligence Division and Violent Crimes Unit (VCU) were granted a search and seizure warrant for 119 Angel Drive, apartment E and the person of Jermaine Robinson. Surveillance was set up at this location and officers observed a male identified as Jermaine Robinson exit the rear of the above address and [approach] a parked vehicle. An exchange was made between Robinson and the vehicle's occupant. Officers recognized this activity as narcotics sales. A short time later, officers observed a male, later identified as [the defendant] exit the above address followed by Robinson. [The defendant] was directed by Robinson to approach two recently parked vehicles. He had a short conversation with the occupants of both vehicles and then exchanged an item for an item with both. Both vehicles then left the area. Officers recognized this activity as narcotics sales. At this time, the determination was made to execute the search and seizure warrant on the above address. Officers gained entry through the front door. Upon entering the apartment . . . [o]fficers observed [the defendant] on the couch and he attempted to move towards the front door. He was shoved to the ground and handcuffed after continuing to move towards the door. . . . Officers located $1,680.00 in US currency, one thousand nine hundred sixty (1960) white glassine bags stamped 'KING' containing a brown powder like substance, a plastic sandwich bag containing a white rock like substance (3.0 grams), a glass jar containing a green plant like substance (9.5 grams, one burnt glass smoking pile on [the defendant's] person . . . . All parties in the apartment were arrested. [The defendant] was charged with Possession with Intent to Sell (§ 21a-278) (a)+, Operation of Drug Factory (§ 21a-277 (c), Interfering with Search (§ 54-33d), Possession with Intent (§ 21a-278 (b)*+ and Possession of Marijuana less than 4 oz. (§ 21a-279 (a) (1st). This matter is currently pending in the Waterbury Judicial District under Docket Number UWY-CR16-441054-T. [The defendant] is currently held on bond.

"9. That based on the above facts and circumstances, this affiant feels that Probable Cause exists to believe that the accused has violated:

"Standard Condition(s) of Probation:

"#1 Do not violate any criminal law of the United States, this state or any other state or territory.

"#2 Report as the Probation Officer tells you, tell your probation officer immediately if you are arrested and, if you are incarcerated, report to the

Probation Officer immediately after you are released.

"10. It is therefore requested that a warrant for the arrest of [the defendant] be issued and that he be charged with Violation of Probation (§ 53a-32)."

[9] The transcript of the colloquy between Judge Devlin and the defendant discloses the following:

"[The Defendant]: I have a quick question. In this situation, say I beat my criminal charges right now; can [there] still be a violation of probation?

"The Court: Yeah. Different standard. And one has a standard of proof beyond a reasonable doubt. Another has a standard of preponderance of evidence. And generally the exclusionary rule which prevents the admission of certain . . . evidence illegally seized by the police is not applicable in violation of probation cases. So although the cases are very similar in terms of the underlying conduct, resolution of one would not necessarily mean the other one goes away.

"[The Defendant]: All right. I understand that. All right. In conclusion with that, in my situation, the evidence can be held against me. What if it's not my evidence at all? Because there's not nothing that pertain[s] to me.

"The Court: That's a question of fact.

"[The Defendant]: Question of fact. All right, I understand.

"The Court: I guess that's what it'll be all about."

[10] The defendant claims that he filed the speedy trial motion in the criminal case but that the courthouse clerk placed it in the violation of probation file. The defendant has not identified any evidence or finding to substantiate that claim.

[11] Mariani represented to the court that the assistant state's attorney who had been handling the violation of probation case was ill on June 14, 2017, and Mariani was substituting for him.

[12] See General Statutes § 52-143 (a), which governs the service of subpoenas for witnesses.

[13] VOP is an expression commonly used with reference to a violation of probation hearing.

[14] There were eight occasions from August 11, 2015, through September 20, 2016, that the defendant did not show up for his appointment.

[15] The defendant has not challenged the court's finding that he failed to report to the Office of Adult Probation as directed or that he was in possession of marijuana.

[16] The trial court's self-admonishment should be noted by all judges to avoid the claim raised by the defendant in the present appeal, i.e., the court found the defendant had violated Connecticut laws with which he had not been charged. On the basis of the court's admonition and its decision not to find that the defendant had violated the laws of Connecticut on the basis of cocaine possession, we do not believe that the court intended to find the defendant had violated a law of Connecticut on the basis of a statute with which he had not been charged.

[17] The court further stated that, in concluding that the defendant violated that portion of his conditions of probation that he not violate the laws of the state, that it had to make some further findings regarding what happened. The court stated: "I credit the testimony of . . . Medina. I watched him testify. I found him to be extremely credible. He was very professional, very precise. There is no animosity, no bias shown. He had—if he really wanted to hang [the defendant], he could have easily said he saw the items exchanged. His testimony was that he had a clear, unobstructed view, that he was able to see [the defendant]—well, I have to back up because it is important to my ruling. The testimony against [the defendant] is not just that he was observed in a hand-to-hand type of transaction for two different cars. The testimony is much more substantial. The testimony is that . . . Medina observed . . . Robinson basically serve another vehicle, that he observed that drug transaction and that shortly thereafter, after that car left, that . . . Medina was within really just feet of the two cars that pulled up, he said he observed both cars, people on the phone and cell phones and waiting, which is significant. It's not just that somebody pulls up and someone comes up to the door. The testimony is that they get on the phone and then within minutes, if not seconds after that, [the defendant] came out of the rear of the building where the heroin was later found, 119 E Angel Drive, and followed closely by . . . Robinson, who is on the phone. And that . . . Robinson directed the defendant to each of the cars. That the defendant then proceeded to go to the car to have a quick exchange with the occupants of each of those two cars, then come back into the house afterwards. When he got back in the house, the testimony is, I think, fifteen to twenty-five minutes later, the search warrant was executed and

the defendant was within two feet of 1960 bags of heroin that were sitting out on the table in front of [the defendant].

"The state's theory of the case is not that [the defendant is] the main guy here; obviously . . . Robinson is the main guy. But the state's theory is that [the defendant] was assisting . . . Robinson in his drug operation. I find that the state has proved beyond—well, I believe beyond reasonable doubt that the defendant has been proved to be involved with conspiracy to sell narcotics, conspiracy to possess with intent to sell narcotics, that he is in possession of drug paraphernalia, and he's in possession of narcotics with intent to sell. The quantity of narcotics is not consistent with personal use. It's a huge amount of narcotics. There's corroboration that these were sales, the recovery of the money.

"So I will say I've heard testimony of . . . Epps. I did not find him credible at all. I had a chance to watch . . . Epps. He ultimately really did not know when it was that he had this conversation with the defendant.

"I, also, as much as I have a great deal of respect for [the defendant], I think [that he has] been a gentleman to me here and seem[s] to be very intelligent. . . . I did not find [his] testimony credible. To me, in some portions, it was very rehearsed. In other ways there was not much detail. I had a chance to observe [the defendant] as well as . . . Medina. I think . . . Medina's testimony is obviously critical to the state's case. I find that he was credible beyond a reasonable doubt. He was extremely credible. And so I rely on his testimony and find the defendant violated those statutes of the Connecticut General Statutes.

"*So I make a finding based on the whole record. And I make a finding that the violation of those two sections, the section the defendant is required to report as the probation officer tells you and that you also—that you do not violate any criminal laws of the state of Connecticut. Those have been established by reliable and probative evidence. And by that, I mean that those violations have been established by the fair preponderance of the evidence.*" (Emphasis added.)

The court stated that it had reviewed the law with respect to possession and specifically found that the defendant had violated the charge of possession of narcotics with intent to sell. The court further stated: "Possession is defined by the Connecticut General Statutes as to have physical possession or otherwise to exercise dominion or control over tangible property. And possession means you either have the substance, in this case the nineteen hundred bags of heroin on your person, which there's no evidence that you had it on your person or otherwise having control over the substance, knowing where it is and being able to access it, and the evidence establishes, I think, beyond a reasonable doubt, that you did have possession of that nineteen hundred bags, but, again, the standard here is whether the state's proven this by a fair preponderance of the evidence, and I will make that finding.

"I will refer to the entire § 2.11-1 which refers to constructive possession. Possession does not mean one must have the illegal object upon one's person. Rather, a person, although not in actual possession, knowingly has the power and the intention at a given time to exercise control over a thing is deemed to be in constructive possession of the item. As long as the substance was in a place where the defendant, if he wishes, can go and get it, it's in his possession. I think that evidence proves that. I think the evidence proves, as I indicated before, that, with intent to—with intent to sell, the defendant agreed with one or more persons, obviously . . . Robinson and maybe others, and that any one of them did an act in furtherance of that conspiracy." The court also found that the state had proved that there was probable cause to believe that the narcotic substance was heroin.

[18] Although defendant raised the sufficiency of the evidence claim last in his brief, we review it first because "any defendant found [to have violated his probation] on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*." (Internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 777, 99 A.3d 1130 (2014), cert. denied, 574 U.S. 1177, 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

[19] The text of two of the relevant statutes is provided as follows for purposes of comparison:

General Statutes § 21a-277 (a) provides: "(1) No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance, or (B) hallucino-

genic substance."

This is one of the statutes the court found that the defendant violated.

General Statutes § 21a-278 (a) provides in relevant part: "(1) No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, (A) one or more preparations, compounds, mixtures or substances containing an aggregate weight of (i) one ounce or more of heroin or methadone, or (ii) one-half ounce or more of cocaine or cocaine in a free-base form, or (B) a substance containing five milligrams or more of lysergic acid diethylamide. The provisions of this subdivision shall not apply to a person who is, at the time of the commission of the offense, a drug-dependent person."

This is one of the statutes with which the defendant was charged by the police.

[20] We, however, *do not conclude* that it was improper for Judge Murphy to consider the evidence of the defendant's drug dealing during the dispositional portion of the violation of probation hearing. The evidence presented at the violation of probation proceeding was clearly spelled out in the police report and in Fenn's application for a violation of probation arrest warrant. A trial court may consider the evidence in the *whole record* when deciding whether to continue or revoke the sentence of probation. *State* v. *Corringham*, supra, 155 Conn. App. 837.

[21] In his brief, the defendant stated that "prosecutorial impropriety" deprived him of his right to due process, and he asks this court to take notice of "the plain error of the state's [attorneys]" for failure to comply with disclosure that prejudiced the defendant. Because we conclude that there was no *Brady* violation, the defendant's claim of prosecutorial impropriety fails.

[22] The police report in question concerned a search of a motor vehicle, the key to which the police found in the apartment. The state did not present evidence related to the key or the motor vehicle or to connect the defendant to the motor vehicle during the violation of probation hearing.

[23] We have reviewed the file and are unable to find that the state filed a motion to proceed with the violation of probation hearing before the trial on the drug charges as ordered.

[24] Judges Devlin, Fasano and Murphy explained to the defendant that the state's burden of proof in a violation of probation case was less stringent than in a criminal case. It appears from the defendant's arguments in the trial court and his claim of insufficient evidence regarding possession of narcotics on appeal that the defendant is under the misguided impression that if he went to trial on the drug charges first and was found not guilty that he could not be found guilty of violating his probation. The defendant appears not to comprehend that, theoretically, he could have been tried on both the violation of probation and criminal charges no matter which proceeding was held first.

[25] This case is unlike *State* v. *Repetti*, supra, 60 Conn. App. 614, in which the violation of probation warrant application recited the facts and the charge of burglary in the second degree, as stated in the police report. Id., 616–17. The state later withdrew the burglary charge for lack of probable cause and filed a substitute information alleging two different crimes at the beginning of the violation of probation hearing. Id. The warrant application, however, contained a recitation of the facts of the underlying incident that formed the basis of the court's ultimate finding that the probationer violated his probation and, thus, provided the defendant with adequate notice of the ways in which he was found to have violated his probation. Id., 618.

[26] Therkildsen noted that the defendant had been sentenced to five years of incarceration in the violation of probation case on the basis of his conduct under the drug charges. "Based on that sentence, and based on the facts, it's the state's position, as it was at the violation of probation, that [the defendant] was a minor player in the drug business while he was participating in it. The operation of the drug business was, in the state's position . . . Robinson, and it was the state's position, as well, that [the defendant] was employed or worked somehow for . . . Robinson. And the five years [of] punishment is sufficient for this matter." Pursuant to the defendant's motion, Judge Murphy dismissed the drug charges against the defendant.

[27] Our review of the record leads us to conclude that Judge Murphy went out of his way to explain patiently to the self-represented defendant the procedures in a violation of probation proceeding.